Grant REYNOLDS, and the Estate
of Dale C. Eckert Corporation,
Plaintiffs–Appellants,

v.

Philip B. WAGNER; William Simon,
Defendants–Appellees.

No. 93–56629.

United States Court of Appeals,
Ninth Circuit.

Submitted April 3, 1995 *.

Decided May 26, 1995.

William McKinnon, Sausalito, CA, for plaintiffs-appellants.

Stuart K. Lesansky, Lesansky & Assoc., Los Angeles, CA, for defendant-appellee Wagner.

Stephen T. Hodge, Wehner and Perlman, Los Angeles, CA, for defendant-appellee Simon.

Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

What constitutes "excusable neglect" when the appellant fails to file a notice of appeal on time? We must interpret what the Supreme Court did *not* say in a recent case.

I.

In 1982, the Dale C. Eckert Corporation ("Eckert"), a general contractor, entered into a construction contract with Orange Tree

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34–4.

Associates, a developer. Pursuant to that contract, Eckert was to construct a 100–unit condominium complex in Long Beach, California, for which Orange Tree was to pay it $5.3 million. Orange Tree funded the project by borrowing $10.56 million from State Savings and Loan Association, secured by a first lien on the real property.

State Savings ultimately became insolvent. In September 1988, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as a receiver for the defunct institution. The FSLIC chartered New West Federal Savings and Loan Association ("New West") as a successor entity.[1] New West acquired the note on the Orange Tree project.

In April 1985, prior to the project's completion, Orange Tree filed a petition in bankruptcy under Chapter 11. Orange Tree's principal creditors were New West and Eckert, which held a $765,763 mechanics lien. Because the amount due New West, which had a priority lien on the real property, far exceeded the project's value, Eckert's claim was rendered virtually worthless.[2]

In March 1986, Eckert itself filed for bankruptcy. Philip Wagner was appointed as trustee for the Eckert estate. One year later, William Simon was appointed as attorney for Wagner in his capacity as trustee for the estate.

Recognizing that Eckert's interest was subordinate to the secured lien of the bank, which was likely to account for all of Orange Tree's assets, Wagner agreed to exchange Eckert's disputed, secured claim of $765,763 for an undisputed, unsecured claim of $75,000. Orange Tree had proposed a reorganization plan under which unsecured creditors would be paid approximately ten cents on the dollar. Under this plan, Eckert would realize about $7,500 in satisfaction of its claim.[3]

Appellant Grant Reynolds, a subcontractor on the Long Beach project, was one of Ec-

kert's major creditors. Dissatisfied both with the Orange Tree reorganization plan and with the proposed compromise, Reynolds advised Wagner of his theory that New West was a joint venturer on the Long Beach project and thus could not also be the senior lienholder. If Wagner could successfully demonstrate a joint venture, Reynolds contended, New West's deed of trust would be set aside and Eckert could collect all of its claim. Wagner rejected Reynolds' advice, electing not to challenge New West's claim.

In September 1988, Wagner and Orange Tree filed a joint motion in Eckert's bankruptcy proceeding seeking approval of the compromise of Eckert's claim. Reynolds appeared at this hearing, and raised his objections. Further, Reynolds offered to pay the estate more than the $7,500 it would receive from the compromise and to hire special counsel to pursue Eckert's claim against Orange Tree. The court accepted Reynolds' offer. In addition, the court permitted Wagner to resign as trustee, and appointed a new trustee for the estate.

Special counsel for the Eckert estate then brought an action in bankruptcy court in March 1989, seeking to overturn the Orange Tree reorganization plan. The court held that the limitations period for seeking a revocation of the reorganization plan had lapsed, and dismissed Eckert's claim as untimely. The Bankruptcy Appellate Panel affirmed on this ground, as did this court. *See In re Orange Tree Assocs. Ltd.*, 961 F.2d 1445 (9th Cir.1992).

■ Reynolds and the Eckert estate thereafter filed the claims in this action against Wagner and Simon, alleging that they had been negligent in failing to pursue Eckert's claims against Orange Tree. Both Wagner and Simon filed motions for summary judgment which the district court granted, reasoning that they could not have recovered in the Orange Tree bankruptcy proceedings because of the primary lien of

---

1. The remainder of this opinion will not distinguish between New West and its predecessor-in-interest, but instead will refer to the institution as New West.

2. The value of Eckert's claim was further diminished by the fact that Orange Tree disputed it.

3. The bankruptcy court approved the Orange Tree reorganization plan in June 1988. Wagner voted for the plan.

New West Bank, and because the doctrine enunciated in *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) barred any claims that could have been asserted to challenge the lien. Reynolds and Eckert appealed.[4]

## II

Before we may consider the merits of this appeal, however, we have a controlling threshold jurisdictional issue. A brief overview of the procedural history of this appeal is necessary to sort it out.

### A

■ The district court entered summary judgment in favor of Wagner and Simon on September 1, 1993. Pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Reynolds and Eckert had thirty days in which to file an appeal—that is, until Friday, October 1, 1993—which they failed to do. Instead, on Monday, October 4, 1993, three days after the time to appeal had expired, Reynolds and Eckert filed a Motion for Extension of Time for Filing Notice of Appeal pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure. In explanation of the delay, counsel for the Eckert estate stated that he had failed to make contact with the Eckert trustee in the thirty days following the entry of judgment, and thus was unsure whether to proceed with the appeal. Counsel gave no reason for his inability to meet with the trustee; instead, he stated simply that "[a]lthough both [counsel for the trustee] and I have tried to make contact on several occasions, to this date we have been unable to schedule a meeting wherein he and I could meet with the trustee and obtain his instruction regarding appeal." Without explanation, the district court granted the motion for an extension of time.

Rule 4(a)(5) provides that "[t]he district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." This court has applied the good cause standard only to extension motions filed within the initial thirty-day appeal period following judgment. When a motion for extension of time to appeal is filed, as here, *after* the expiration of such thirty-day period, the appropriate standard for extension of the filing period is "excusable neglect." *See State of Oregon v. Champion Int'l Corp.*, 680 F.2d 1300, 1301 (9th Cir.1982).

■ Traditionally, this court has viewed excusable neglect through a narrow lens, finding the standard satisfied only in "extraordinary cases where injustice would otherwise result." *Id.* at 1301; *see also Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir.1986) ("Inadvertence or mistake of counsel ... does not constitute excusable neglect under this standard."). Noting this, Wagner and Simon contend that the explanation given by Eckert's counsel does not rise to the level of excusable neglect, and thus that we must dismiss for lack of jurisdiction.[5]

### B

We share Wagner's and Simon's jurisdictional concerns. However, we are troubled

---

4. As an initial matter, we consider Wagner's and Simon's contention that Reynolds is not properly before this court as an appellant. The first sentence of the Notice of Appeal filed in this case states: "NOTICE IS HEREBY GIVEN that Plaintiff Estate of Dale C. Eckert Corporation, above named, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the judgment entered in this action on September 1, 1993." Because Reynolds is not mentioned, Wagner and Simon argue, he cannot be considered a party to this appeal. To support their argument, Wagner and Simon cite Rule 3(c) of the Federal Rules of Appellate Procedure, which requires that all parties to an appeal be properly named.

Wagner and Simon are correct in arguing that all parties to an appeal must be clearly identified

in the notice of appeal. However, Wagner and Simon fail to note that Grant Reynolds is named in the caption of the Notice of Appeal. Rule 3(c), upon which Wagner and Simon rely, expressly states that: "A notice of appeal must specify the party or parties taking the appeal by naming each appellant *in either the caption or the body of the notice of appeal.*" (emphasis added). Because Reynolds is named in the caption, he is properly before this court as an appellant.

5. Wagner and Simon presented this argument to a motions panel of this court, seeking the dismissal of this appeal. The panel denied the motion. Wagner and Simon then filed a motion for reconsideration, which the motions panel denied in part. However, the panel granted the motion to the following extent: "The question of

not because we believe Reynolds and Eckert have failed to show excusable neglect under this court's stringent definition, but rather because the Supreme Court appears to have just changed the rules. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer Investment Services,* the Supreme Court held that attorney negligence may, in certain circumstances, constitute "excusable neglect," considerably liberalizing its meaning and prescribing a new analytical test.

In defining the phrase, the Court first noted that Congress "intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Id.* at ——, 113 S.Ct. at 1495 (quotations omitted). By using the word "neglect," the Court explained, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness. . . ." *Id.* The determination of whether such neglect is "excusable," the Court concluded, "at bottom is an equitable one, taking account of all relevant circumstances surrounding the party's omission"—circumstances which include the risk of prejudice to the nonmoving party, the extent of the delay, and its potential effect on judicial proceedings, the reason for the delay and whether the moving party acted in good faith.

We recognize that the Court in *Pioneer Investment Services* explored the meaning of "excusable neglect" within the context of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, the provision governing late filings in bankruptcy court.[6] *See In re Dix,* 95 B.R. 134, 137–38 (9th Cir. BAP 1988) (distinguishing between excusable neglect as used in Bankruptcy Rules and excus-

able neglect as used in Rule 4(a)). Nonetheless, we are persuaded that *Pioneer Investment Services* is applicable to the case before us. "Because the Court's analysis of what constitutes 'excusable neglect' in the bankruptcy context rested on the plain meaning of the terms, there is no reason that the meaning would be different in the context of Fed. R.App.P. 4(a)(5)." *City of Chanute, Kansas v. Williams Nat. Gas Co.,* 31 F.3d 1041, 1046 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995); *see also United States v. Hooper,* 9 F.3d 257, 259 (2d Cir.1993) (applying *Pioneer Inv. Servs.* in context of Fed.R.App.P. 4(b)).

Further, the Court's opinion draws upon the use of the term "excusable neglect" in several other federal rules. *See Pioneer Inv. Servs.,* —— U.S. at —— at n. 9, 113 S.Ct. at 1496 & n. 9 (interpreting "excusable neglect" in context of Rule 6(b) of the Federal Rules of Civil Procedure and of Rule 45(b) of the Federal Rules of Criminal Procedure); *id.* at ——, 113 S.Ct. at 1497 (interpreting use of term in context of Rules 13(f) and 60(b)(1) of Federal Rules of Civil Procedure). This suggests to us that the Court's definition extends beyond the limited parameters of Rule 9006(b)(1).

We are persuaded that "excusable neglect" in the context of Rule 4(a)(5) has the same meaning as the Supreme Court recently determined in the Bankruptcy Rules context. Accordingly, we remand this case to the district court for a finding whether Reynolds' and Eckert's explanation meets the *Pioneer Investment Services* standard.

REMANDED.

---

whether the district court abused its discretion in extending the time to file a notice of appeal based exclusively on good cause is referred to the panel considering this appeal on its merits." Accordingly, we are free to review Wagner's and Simon's jurisdictional claim. Further, "the fact that the motions panel denied [appellees'] motion to dismiss this appeal does not free this court from the independent duty to decide whether we have jurisdiction." *United States v. Houser,* 804 F.2d 565, 568 (9th Cir.1986) (quotations omitted).

**6.** Bankruptcy Rule 9006(b) provides:

(1) *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by any order of court, the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.