910 P.2d 116

**John H. ENOS, Jr. and Aileen H. Enos, Plaintiffs–Appellants,**

v.

**PACIFIC TRANSFER & WAREHOUSE, INC., a Hawai'i corporation, and Maynard Koa, Defendants–Appellees, and John Does 1–10, Jane Does 1–10, and Doe Entities 1–10, Defendants, and Leslie S. Fukumoto, Party in Interest–Appellant.**

**No. 18128.**

Supreme Court of Hawai'i.

Jan. 25, 1996.

Reconsideration Denied Feb. 9, 1996.

Robert P. Richards, Ralph J. O'Neill and Michele-Lynn E. Luke of Reid, Richards & Miyagi, on the briefs, Honolulu, for defendants-appellants/cross-appellees Pacific Transfer & Warehouse, Inc. and Maynard Koa.

Leslie S. Fukumoto, on the briefs, Honolulu, for plaintiffs-appellees/cross-appellants John H. Enos, Jr. and Aileen H. Enos.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Defendants-appellants/cross-appellees Pacific Transfer & Warehouse, Inc., a Hawai'i corporation, and Maynard Koa [hereinafter, collectively, Pacific Transfer] appeal from the (1) judgment, filed on April 8, 1994, and (2) order denying Pacific Transfer's motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial, and motion for remittitur [hereinafter, collectively, Pacific Transfer's post-trial motions], filed July 1, 1994.

Plaintiffs-appellees/cross-appellants John H. Enos, Jr. and Aileen H. Enos [hereinafter, collectively, the Enoses] appeal from the order granting Pacific Transfer's motion to extend the time in which to file its notice of appeal, filed July 1, 1994. For the reasons discussed below, we reverse the trial court's order extending time to file a notice of appeal and dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

This appeal and cross-appeal arise out of litigation surrounding a vehicular accident, which occurred on December 10, 1985. The Enoses filed a complaint on September 19, 1990, alleging claims for negligence and loss of consortium against Pacific Transfer. The Enoses' motion for partial summary judgment on the issue of liability was granted on February 4, 1994. Jury trial on the issues of damages and comparative negligence began on February 7, 1994. The jury, on March 4, 1994, returned a special verdict in favor of the Enoses and against Pacific Transfer. Subsequent to the jury's verdict, the following events occurred:

Date unknown The Enoses, as prevailing parties, submitted a proposed judgment.

March 15, 1994 Pacific Transfer submitted an alternate proposed judgment, pursuant to Rule 23 of the Rules of the Circuit Court.

April 8, 1994 Judgment Upon Special Verdict was filed.

Sometime Between April 20–28, 1994 Pacific Transfer received a file-stamped copy of the judgment.

May 4, 1994 Notice of Entry of Judgment was filed.

May 13, 1994 Pacific Transfer filed its post-trial motions.

June 1, 1994 Pacific Transfer filed its motion to extend time to file a notice of appeal, pursuant to Hawai'i Rules of Appellate Procedures (HRAP) Rule 4(a)(5).

June 3, 1994 Pacific Transfer's notice of appeal was filed.

June 20, 1994 The Enoses filed their notice of cross-appeal.

July 1, 1994 Orders denying Pacific Transfer's post-trial motions and granting its motion for extension of time were filed.

July 6, 1994 Pacific Transfer filed an amended notice of appeal.

Pacific Transfer's counsel, Robert Richards, attested in his affidavit attached to the motion for extension to file the notice of appeal that he was orally advised on April 14, 1994 that the judgment in this case had, in fact, been filed but was not informed of the date of filing. Richards asserted that he did not receive a file-stamped copy of the judgment, reflecting the April 8 filing date, until sometime between April 20, 1994 and April 28, 1994. However, Richards knew or should have known, at least by April 20, 1994, that the judgment was filed on April 8 because, on April 20, 1994, Richards's co-counsel had written to the Enoses' counsel informing him that the judgment was filed on April 8, 1994. In that letter, Richards's co-counsel also requested a copy of the notice of entry of judgment because, "since certain court-imposed deadlines begin on the date of the Entry of Judgment, we would appreciate you telephoning us immediately upon receipt of this letter to indicate the date that the Entry of Judgment was filed such that we may respond appropriately."

Apparently, when no notice of entry of judgment was forthcoming, Richards prepared and filed one on May 4, 1994. On May 13, 1994, Pacific Transfer filed its post-trial motions, citing Hawai'i Rules of Civil Procedure (HRCP) Rules 50(b), 59, and 60. The Enoses, in their opposing memoranda, argued that Pacific Transfer's post-trial motions were untimely pursuant to HRCP Rules 58 and 59.

Under HRCP Rule 58, "[t]he filing of the judgment in the office of the clerk constitutes the entry of judgment." Under HRCP Rule 59, motions to alter or amend the judgment or motions for new trial must be served "within 10 days after the entry of judgment." The Enoses maintained that, because the judgment in this case was filed on April 8, 1994, Pacific Transfer's post-trial motions should have been filed on or before April 18, 1994, but were not filed until May 13, 1994. Thus, the post-trial motions were untimely.

In its reply memoranda, Pacific Transfer argued that "[o]n April 8, 1994, the Judgment proposed by [Pacific Transfer] was filed; however ... the judgment in this case was not *entered* by the Clerk of the Court until May 4, 1994." (Emphasis in original.) Pacific Transfer also argued that the Enoses' "claim that the *filing* of the Judgment rather than the *entry* of the Judgment begins the running of any time limits for the filing of post-trial motions.... ignore[s] the explicit and precise provisions of the *Hawaii Rules of Civil Procedure* [and] should be rejected." (Emphases in original.) Although the transcript of the May 31, 1994 hearing on Pacific Transfer's post-trial motions is not included in the record on appeal, the record reflects that, at the May 31 hearing, the court noted that the motions were untimely, and the post-trial motions were denied.

Apparently realizing the significance of the trial court's ruling with respect to the judgment as having been "entered" on April 8, 1994, and that the untimely post-trial motions would not operate to toll the time to appeal, Richards filed, on behalf of Pacific Transfer, a "Motion for Extension of Time to File Notice of Appeal" on June 1, 1994, pursuant to HRAP Rule 4(a)(5).[1] He argued that the appeal was meritorious and "that the circumstances ... concerning the filing of the Judgment Upon Special Verdict together with the filing of the Notice of Entry of Judgment, when combined with counsel's honest belief that the 'triggering' date for purposes of deadlines was the latter rather than the former ... constitutes excusable neglect." Richards attested in his affidavit, *inter alia*, that:

5. On [April 14, 1994,] affiant had been orally advised that a Judgment was filed but had not received a file stamped copy. Further, affiant was unaware of whether judgment had, in fact, been entered.

. . . .

7. Attached hereto as Exhibit "D" is a true and correct copy of a letter, dated April 28, forwarding both a filed [sic] stamped copy of the Judgment and a copy of the proposed Notice of Entry of Judgment to Plaintiffs' counsel. Affiant believed that a filed [sic] stamped copy of the Judgment was actually received by his office between the date of Exhibit "C" (April 20) and the date of Exhibit "D" (April 28).

. . . .

10. Affiant further avers that "excusable neglect" exists if, in fact, "entry of judgment" occurred on April 8 when the Judgment Upon Special Verdict was filed rather than May 4 when the Notice of Entry of Judgment was filed, based upon the fact that *he in good faith believed and still believes that, under the circumstances, entry of judgment did not take place until May 4.*

(Emphasis added.) Essentially, Richards argues that, although he knew that the judgment had been filed on April 8, he did not know that a judgment is "entered" when it is filed, despite the unambiguous language of the rules. Richards apparently also asserts that the failure to timely file a notice of appeal between April 14 and the May 8 appeal deadline was due to excusable neglect because he believed "in good faith" that entry of judgment did not occur until the notice of entry of judgment was filed.

Richards also suggested that the HGEA strike, which affected court operations between April 18 and April 29, "complicated" efforts to follow up because one could not review court pleadings, and filings were limited. He acknowledges, however, that he received a file-stamped copy of the judgment between April 20 and April 28, and nowhere indicates that the strike impeded his efforts to file a notice of appeal.

The circuit court heard Pacific Transfer's motion for extension on June 3, 1994. The presiding judge, in granting the motion, stated:

> than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(4) of this Rule 4.... No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

---

1. HRAP Rule 4(a)(5) provides in relevant part that:

> The court or agency appealed from, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion actually filed not later

Well, it's hard for the court to insist upon a strict construction of the rules when the court itself doesn't follow the rules; namely rule 77(d) where the clerk has to serve entry of judgment. And that section makes explicit that in the absence of notice of entry by the clerk then rule 4(a) should certainly be available.

I don't think there's any additional prejudice, but I will grant this motion. In addition, I will note that there was a strike during which time communications between counsel and the court were [in] utter chaos[,] containing much misinformation. I'll also note that there was a change in the administrative judgeship at around this time and a move of chambers across the hall, which also created chaos of its own. I'll note that I'm acting Circuit Court judge out of the administrative judge's chambers. That's additional confusion. I think upon that basis alone there was excusable neglect. I think the plaintiffs' counsel has also neglected the good cause grounds.

Basically, I don't feel there's any additional prejudice by my allowing this motion. Mr. Richards, your motion is granted.

Subsequent thereto, the following exchange occurred:

THE COURT: And, incidentally, Mr. Richards, you're one of the best and most experienced litigators in this court. And, when you tell me you don't know when the time runs, I'm a very stupid man, but I'm not that naive, sir.

MR. RICHARDS: Your Honor, I do not know—well, I won't add anything. I still to this day do not believe it's the 8th. Thank you.

Pacific Transfer thereafter filed its notice of appeal on June 3, 1994, and the Enoses filed a notice of cross-appeal on June 20, 1994. On July 6, 1994, Pacific Transfer filed an "amended" notice of appeal, purporting to appeal from the July 1, 1994 denial of its post-trial motions. The propriety of the circuit court's order granting Pacific Transfer an extension of time to file its notice of appeal is the only issue raised by the Enoses' in their cross-appeal.

## II. DISCUSSION

■ "An appellant's failure to file a timely notice of appeal is a jurisdictional defect that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion." *Bacon v. Karlin,* 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986) (internal quotation marks and brackets omitted). The time for filing a notice of appeal is governed by HRAP Rule 4, which provides in relevant part:

(a) Appeals in Civil Cases.

(1) In a civil case in which an appeal is permitted by law as of right ..., the notice of appeal required by Rule 3 shall be filed by a party with the clerk of the court ... appealed from within 30 days after the date of entry of judgment or order appealed from.

. . . .

(6) a judgment or order is entered within the meaning of this Rule 4(a) when it is filed in the office of the clerk of the court or agency involved.

As previously indicated, the judgment in this case was filed on April 8, 1994. The notice of appeal, however, was not filed until June 3, 1994, fifty-six days after the judgment was filed. Thus, if the motion for extension of time for filing a notice of appeal was, as the Enoses contend, improperly granted, the notice of appeal was not timely filed, and we are without jurisdiction. However, "we have jurisdiction here on appeal ... for the purpose of correcting an error in jurisdiction." *Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 133, 870 P.2d 1272, 1277 (1994). We therefore review the trial court's grant of Pacific Transfer's motion to extend time for filing a notice of appeal, and we do so for an abuse of discretion. *Wiegand v. Colbert,* 68 Haw. 472, 718 P.2d 1080 (1986). Initially, however, we consider *de novo* the trial court's interpretation of HRAP Rule 4(a)(5). *See State v. Ramela,* 77 Hawai'i 394, 395, 885 P.2d 1135, 1136 (1994).

### 1. *HRAP Rule 4(a)(5)*

■ HRAP Rule 4(a)(5) provides in relevant part that "[t]he court or agency appeal-

ed from, *upon a showing of excusable neglect or good cause,* may extend the time for filing a notice of appeal[.]" (Emphasis added.) The trial judge's oral ruling suggests that he found both excusable neglect and good cause, stating, "I think upon that basis alone there was excusable neglect. I think the plaintiffs' counsel has also neglected the good cause grounds." Although the court did not rest its decision on "good cause," it clearly indicated that it thought that the "good cause" standard was applicable under the circumstances of this case. The great weight of authority from other jurisdictions interpreting comparable rules holds otherwise. This court has yet to address the distinction between "good cause" and "excusable neglect," and we do so now.

HRAP Rule 4(a)(5) is patterned after Federal Rules of Appellate Procedure (FRAP) Rule 4(a)(5), which, until its amendment in 1979, allowed extensions of time only upon a showing of excusable neglect. An Advisory Committee Note explains the rationale for enabling district courts to grant an extension of time upon a showing of "excusable neglect or good cause":

> The proposed amended rule expands to some extent the standard for the grant of an extension of time. The present rule requires a "showing of excusable neglect." While this was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, and remains so, it has never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time. In such a case "good cause," which is the standard that is applied in the granting of other extensions of time under [FRAP] Rule 26(b) seems to be more appropriate.

FRAP 4(a)(5) Advisory Committee Note to 1979 amendment.

The majority of the Circuit Courts of Appeals have relied upon the Advisory Committee Note in holding that the "good cause" standard is applicable only where a Rule 4(a)(5) motion is filed during the thirty-day period for taking an appeal as of right, after which the stricter "excusable neglect" standard governs. *See Pontarelli v. Stone,* 930

F.2d 104, 109–10 (1st Cir.1991) (collecting cases from the Second, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits); *see also Consolidated Freightways Corp. of Delaware v. Larson,* 827 F.2d 916, 918 (3d Cir.1987) ("a party who files for an extension of the 30 day appeal period after that period has expired must demonstrate 'excusable neglect' in order to receive an extension"); *City of Chanute v. Williams Natural Gas Co.,* 31 F.3d 1041 (10th Cir.1994) (applying "excusable neglect" standard when notice of appeal filed after 30–day period prescribed by FRAP 4(a)(1)). We decline, however, to incorporate this interpretation into HRAP Rule 4(a)(5). Under the majority approach, "excusable neglect" is a strict standard, requiring a showing that the failure to timely file a notice of appeal was due to circumstances beyond the appellant's control. *See, e.g., State of Oregon v. Champion Int'l Corp.,* 680 F.2d 1300, 1301 (9th Cir.1982) ("[The excusable neglect standard] was intended to apply only to 'extraordinary cases where injustice would otherwise result.' ... Inadvertence or mistake of counsel does not constitute excusable neglect.").

Although the majority approach provides the advantage of a bright-line rule, there is nothing in the plain language of HRAP Rule 4(a)(5) that suggests, or compels, an interpretation that would allow the trial courts to determine the appropriate standard based solely on the date that the motion was filed. The fact that the majority of the Circuit Courts of Appeals interpret FRAP Rule 4(a)(5) in this manner, in one commentator's view, may be nothing more than an accident:

> As originally drafted, the rule allowed an extension on a showing of good cause only if the motion was filed during the original appeal time; the Note of the Advisory Committee stated that only excusable neglect would justify an extension on motion filed after expiration of the original time. The text of the Rule was changed, but the Note was not changed. Relying on the Note, several courts of appeals have held that only a showing of excusable neglect— requiring something more poignant than the lesser test of good cause—can justify an extension of appeal time on motion filed

after expiration of the original time. As a matter of function, this view makes some sense.... If this view is to be adopted, however, it should be supported by an amendment to the Rule that brings the test into conformity with the practice.... [T]he Rules either should be interpreted to mean what they say or should be amended to say what they mean.

C. Wright, A. Miller and E. Cooper, 16 *Federal Practice and Procedure* § 3950 at 556 (Supp.1995).

We believe that the sounder approach, which is more compatible with the plain language of HRAP Rule 4(a)(5) and recent United States Supreme Court case law, is that taken by the First Circuit Court of Appeals in *Scarpa v. Murphy,* 782 F.2d 300 (1st Cir.1979). In that case, the court reasoned that FRAP Rule 4(a)(5) "expressly recognizes 'good cause' as a basis for extension both before and after the expiration of the appeal time," *id.* at 301, and applied the "good cause" standard in circumstances where there was no neglect, excusable or otherwise, on the part of the would-be appellant. *Id.* Because the need for an extension of time to file a notice of appeal in *Scarpa* was caused by the post office taking five days to deliver a properly addressed letter a distance of three miles, which was beyond the movant's control, and not the result of any neglect on the part of the movant, the court of appeals held that the "good cause" standard was applicable and reversed the district court's denial of the FRAP Rule 4(a)(5) motion. *Id.*

In *Pontarelli,* the same court decided that the "good cause" standard was not appropriate where the need for a FRAP 4(a)(5) extension was occasioned entirely by neglect on the part of the would-be appellant, rather than forces beyond his or her control. *Pontarelli,* 930 F.2d at 110.

No less significantly [than the plain language of Rule 4(a)(5) ], the original "excusable neglect" standard, whose customary scope remains unlimited under the language of the amended rule, would be pared by gratuitous interpretation if the amendatory "good cause" analysis were not confined to circumstances unsuited to traditional "excusable neglect" analysis.

The advisory committee note, no less than our decision in *Scarpa,* buttresses our reluctance to interpret "excusable neglect" and "good cause" as overlapping standards under amended rule 4(a)(5)....

We conclude, therefore, that the "good cause" analysis imported under the 1979 amendment neither displaces nor overlaps the "excusable neglect" analysis customarily employed under the earlier rule. Where the need for an extension of time to file a notice of appeal results entirely from neglect attributable to the would-be appellant, as distinguished from forces beyond her control, amended rule 4(a)(5) requires a showing of "excusable neglect."

*Id.* at 110–11 (citations omitted). Because the need for an extension of time in *Pontarelli* was caused by counsel's failure to properly specify the appellants as required by FRAP Rule 3(c), which the court termed "inexcusable neglect," the court held that the district court's denial of the Rule 4(a)(5) motion did not constitute an abuse of discretion. *Id.* at 112; *see also Virella–Nieves v. Briggs & Stratton,* 53 F.3d 451 (1st Cir.1995) (vacating district court's order granting FRAP 4(a)(5) motion based on finding of "good cause," where defendants were on notice that post-trial motions had been denied but failed to determine when the orders had been docketed and remanding for consideration under "excusable neglect" standard); *Gochis v. Allstate Insurance Co.,* 16 F.3d 12 (1st Cir.1994) (where need for extension results from neglect attributable to appellant, rather than from forces beyond appellant's control, appellant must show excusable neglect). Thus, under the First Circuit Court of Appeals' interpretation, the appropriate standard is not determined by the date that the motion for extension was filed, but rather by the circumstances giving rise to the need for the extension of time. Where those circumstances are beyond the control of the movant, the "good cause" standard is appropriate. Where, on the other hand, the need for an extension of time results from some neglect on the part of the movant, the excusable neglect standard must be satisfied.

The reasoning of the First Circuit Court of Appeals is buttressed by the Supreme Court's decision in *Pioneer Investment Services Company v. Brunswick Associates,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). There, the Court considered the meaning of "excusable neglect" within the context of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, in which "excusable neglect" is a unitary standard.[2] The Court stated that it had granted certiorari because of the conflict in the courts of appeals over the meaning of "excusable neglect," and noted, in particular, that:

> The Courts of Appeals similarly have been divided in their interpretations of "excusable neglect" as found in Rule 4(A)(5) of the Federal Rules of Appellate Procedure. Some courts have required a showing that the movant's failure to meet the deadline was beyond its control, *see, e.g., 650 Park Ave. Corp. v. McRae,* 836 F.2d 764, 767 (CA2 1988); *Pratt v. McCarthy,* 850 F.2d 590, 592 (CA9 1988), while others have adopted a more flexible approach similar to that employed by the Court of Appeals in this case, *see, e.g., Consolidated Freightways Corp. of Delaware v. Larson,* 827 F.2d 916 (CA3 1987), *cert. denied sub nom. Consolidated Freightways Corp. v. Secretary of Transp. of Pennsylvania,* 484 U.S. 1032, 108 S.Ct. 762, 98 L.Ed.2d 775 (1988); *Lorenzen v. Employees Retirement Plan of Sperry–Hutchinson Co.,* 896 F.2d 228, 232–233 (CA7 1990).

507 U.S. at —— n. 7, 113 S.Ct. at 1494 n. 7. The Court explained that reasons for failure to comply with a court-ordered deadline range from acts of God to a party's choice to flout the deadline and that "excusable neglect" is not restricted to those circumstances beyond a party's control. Examining the plain meaning of the word "neglect," the Court concluded that

> by empowering the courts to accept late filings where the failure to act was the result of · excusable neglect, Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused

by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Id.* at ——, 113 S.Ct. at 1495.

Although the rule examined by the Court in *Pioneer Investment* did not include a "good cause" standard, both intervening circumstances beyond the party's control and neglect on the part of the party are encompassed within the Court's interpretation of "excusable neglect." The Court's analysis implicitly rejects the majority approach to FRAP Rule 4(a)(5), which is to apply only the "excusable neglect" standard when a motion for extension of time is filed after the thirty-day appeals period and to interpret that standard so strictly that forces within the control of the movant cannot be "excusable neglect." It seems consonant with the Court's reasoning to consider whether the untimely notice of appeal is due to "neglect," in which case the "excusable neglect" standard applies, or whether, on the other hand, it is due to forces beyond the movant's control, in which case the "good cause" standard would apply.

We explicitly adopt this approach for the purpose of HRAP Rule 4(a)(5). Thus, when considering a motion brought pursuant to HRAP Rule 4(a)(5), the trial court must first determine the cause of the delay in filing the notice of appeal. If that cause is beyond the movant's control, the motion may be granted upon a showing of "good cause." If the cause of the delay is some mistake or inadvertence within the control of the movant, the motion may be granted only upon a showing of "excusable neglect."

### 2. The "excusable neglect" standard applies under the circumstances of this case.

▬ In this case, determining the cause of the failure to timely file a notice of appeal requires a review of the record because the trial court did not specifically find the cause. Although the court "noted" that the HGEA strike, the change in administrative judgeship, and a move of chambers resulted in

---

**2.** Rule 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline "was the result of excusable neglect."

"chaos" and "confusion" and, "upon that basis alone[,] there was excusable neglect," the court did not find, and, on this record, we believe could not have found, that the failure to timely file a notice of appeal was due to those factors.

Pacific Transfer argued, and the trial court implicitly agreed, that the clerk's failure to promptly file a notice of entry of judgment excuses the failure to timely file a notice of appeal. This is in direct contravention of the plain language of HRCP Rule 77(d), which provides in relevant part that:

> Lack of notice of the entry by the clerk, or failure to make such service, does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Hawai'i Rules of Appellate Procedure.

Although HRCP Rule 77(d) specifically refers to HRAP Rule 4(a) as providing the only relief for a party's failure to timely file a notice of appeal, nothing in Rule 77(d) suggests that the failure of the clerk to timely notify the parties of the entry of judgment could excuse a party's neglect. "A party has an independent duty to keep informed and mere failure of the clerk to notify the parties that judgment has been entered does not provide grounds for excusable neglect or warrant an extension of time." *Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1412 (9th Cir.1986) (citations omitted). This is especially so where, as here, "[appellants] presented no reason for their failure, for example, to send a messenger to court to look up the relevant date, and we see no 'forces beyond their control,'—at least on this record—that prevented them from taking this eminently reasonable step." *Virella–Nieves*, 53 F.3d at 453.

Furthermore, it is undisputed that, notwithstanding the "chaos" and "confusion" that purportedly hindered communications, Richards, on April 20, 1994, "receiv[ed] verbal notification from the trial court (prompted by defense counsel's telephone call) that the Judgment had in fact been filed on April 8, 1994." Richards did not claim that the failure to file a notice of appeal within the remaining eighteen days before expiration of

the appeal deadline was due to matters beyond his control, that is, that the strike, for example, made it impossible to file the notice. There is nothing in the record to support a conclusion that chaos and confusion on the part of the court prevented the timely filing of the notice of appeal. The only cause that can be discerned from the record for the failure to timely file the notice is, as Richards himself attested in his affidavit, "that he in good faith believed and still believes that, under the circumstances, entry of judgment did not take place until May 4." Because this was clearly within the control of the would-be appellant, only the "excusable neglect" standard, and not the "good cause" standard, is applicable to this case. Therefore, the issue before us is whether the trial court abused its discretion in finding that Richards's neglect in failing to timely file a notice of appeal was "excusable."

### 3. *Ignorance of the rules or the law is not "excusable neglect."*

■ Although there have been cases suggesting that a misinterpretation of the rules can constitute "excusable neglect," *see, e.g., Lorenzen v. Employees Retirement Plan of Sperry and Hutchinson Co.*, 896 F.2d 228, 232 (7th Cir.1990) ("attorney's good faith misinterpretation of a procedural rule may represent such excusable neglect that it would not necessarily be an abuse of discretion for a district court to grant an extension on this basis"), only "plausible misconstruction, but not mere ignorance, of the law or rules" rises to the level of excusable neglect. *Id.* (citation omitted); *see also Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir.1994) ("[Appellant]'s mistake cannot be considered a 'plausible misconstruction' of Rule 4(a)(4); it must be regarded as a failure to follow the plain terms of the Rule.... As this court has explained numerous times: 'The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.'" (Citations omitted.)); *Gochis*, 16 F.3d at 15 (failure to specify appellants in notice of appeal, rendering notice defective and necessitating extension of time, was not due to

plausible misconstruction of FRAP Rule 3(c), but ignorance of the law, and, thus, not excusable neglect).

In *Pogia v. Ramos,* 10 Haw.App. 411, 876 P.2d 1342 (1994), the Intermediate Court of Appeals considered the "excusable neglect" standard in the context of HRCP Rule 60(b) and concluded that ignorance of court rules does not constitute excusable neglect.... And the weight of authority has not recognized ignorance of the law ... to be excusable neglect justifying the invocation of relief under HRCP Rule 60(b)(1). *Id.* at 416, 876 P.2d at 1345 (quotation marks, brackets, and citations omitted). Nor does the United States Supreme Court's decision in *Pioneer Investment,* which is regarded as having relaxed the "excusable neglect" standard, *see, e.g., Reynolds v. Wagner,* 55 F.3d 1426, 1429 (9th Cir.1995), suggest that "excusable neglect" now encompasses ignorance of the rules. The Court, in *Pioneer Investment,* specifically remarked that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect[.]" *Pioneer Investment,* 507 U.S. at ——, 113 S.Ct. at 1496.

The primary basis for Pacific Transfer's motion to extend time was that its counsel believed that the time period for filing a notice of appeal was triggered by the filing of the notice of entry of judgment rather than the filing of the judgment itself. A similar argument was rejected by this court over thirty years ago, wherein this court stated:

Such contention, however, is without merit, for Rule 58 of the Hawaii Rules of Civil Procedure, unlike the Federal Rules in this respect, provides *in haec verba* : "The filing of the judgment in the office of the clerk constitutes the entry of judgment; ...." *The language is crystal clear.*

3. Rules of the Supreme Court Rule 3(f) (1955) provided, in relevant part, that:

When the brief for an appellant is not filed as required by rule, the clerk shall forthwith give notice to counsel for the parties that the matter will be called to the attention of the court on a day certain for such action as the court deems proper, and the case *may* be dismissed. (Emphasis added.)

*Marn v. Reynolds,* 44 Haw. 655, 657, 361 P.2d 383, 385 (1961) (emphasis in original). HRAP Rule 4(a)(6) also unambiguously provides that "a judgment or order is *entered* within the meaning of this Rule 4(a) when it is *filed* in the office of the clerk of the court or agency involved." (Emphases added). Richards's misinterpretation of this rule must be regarded as a failure to follow the plain language of the rule rather than a plausible misconstruction.

Pacific Transfer cites *Yee v. Okamoto,* 44 Haw. 119, 352 P.2d 854 (1960) for the "applicable standard" in determining "excusable neglect." The court in *Yee,* construing the former Rule 3(f)[3] of the Supreme Court Rules, allowed an extension of time to file the opening brief, where counsel mistakenly believed that Rule 3(a) provided for sixty days, rather than thirty days, within which to file the opening brief. The court explained that:

This court does not condone or excuse any infraction of the established rules of judicial procedure. Where, however, the noncompliance is factually found not to have been the result of indifference or callous disregard, but attributable to an honest mistake, and where there has been no palpable prejudice to other parties in the case, this court is warranted, under Rule 3(f), in considering such mitigating circumstances as may be presented.

*Yee,* however, is distinguishable. First, Rule 3(f), unlike HRAP Rule 4(a)(5), did not require a showing of "excusable neglect" but rather gave this court absolute discretion to take whatever action it deemed appropriate, including dismissal of the appeal. Second, unlike the untimely filing of a notice of appeal, late filing of an opening brief does not deprive the court of jurisdiction.[4]

Pacific Transfer also cites *State v. Delaney,* 56 Haw. 444, 540 P.2d 61 (1975), and

4. HRAP Rule 26(b) provides in relevant part that:

The Hawai'i appellate courts for good cause shown upon motion may enlarge the time prescribed by these rules for doing any act, or may permit an act to be done after the expiration of such time. *Provided, however, that no court is authorized to change the jurisdictional requirements contained in Rule 4, supra.* (Emphasis added.)

*State v. Ferreira*, 59 Haw. 255, 580 P.2d 63 (1978), for the proposition that failure of counsel to file a notice of appeal until actual notice of the judgment was received could be excused and that a belated notice of appeal could be treated as timely. In both *Delaney* and *Ferreira*, however, there was a complete failure to learn of the judgment within the time for filing an appeal. In this case, Pacific Transfer does not dispute that it had actual notice of the date the judgment was filed at least eighteen days before the appeal period expired. Also, both cited cases considered criminal appeals, and we have noted that dismissing appeals for untimeliness "can be even harsher in a criminal case than in a civil one since in the latter suit the aggrieved client has, in theory, a malpractice action against his attorney for damages, while in the former no attorney can restore his client's lost liberty." *State v. Caraballo*, 62 Haw. 309, 314, 615 P.2d 91, 95 (1980) (citation omitted). We conclude, therefore, that the cases cited by Pacific Transfer do not stand for the proposition that ignorance of rules or law can excuse the failure to timely file a notice of appeal.

### 4. *The circuit court abused its discretion.*

■ The circuit court's grant of a HRAP Rule 4(a)(5) motion will not be reversed absent an abuse of discretion, and, ordinarily, a finding of "excusable neglect" will not be disturbed. In this case, however, the circuit court's conclusion that there was "excusable neglect" is legally and factually insupportable. Nothing in the record indicates that the failure to file a timely notice of appeal was occasioned by anything other than Richards's purported confusion regarding the time that a judgment is deemed "entered," and the court expressed, in no uncertain terms, its disbelief of that reason. The court, instead, pointed to chaos engendered by moving chambers and the HGEA strike as constituting "excusable neglect," but there was no showing that these factors in any way delayed the filing of the notice of appeal. Further, the court placed excessive weight on the lack of prejudice to the Enoses. The character of the neglect, rather than the consequences, should be determinative of whether it is "excusable." In this case, the

character of the neglect was ignorance of rules of procedure, which no court has found to be excusable. As Judge Friendly, a member of the Advisory Committee that drafted the Federal Rules of Appellate Procedure, commented in *O.P.M. Leasing Services, Inc. v. Far West Federal Savings and Loan Association*, 769 F.2d 911, 917 (2d Cir.1985), affirming the trial court's finding of "excusable neglect" in this case "would convert the 30–day period for appeal provided in [HRAP] Rule 4(a) into a 60–day one—a result clearly not intended by the Rule's framers."

We therefore hold that the trial court abused its discretion by granting the motion to extend time for filing a notice of appeal because the failure to timely file the appeal was caused by counsel's failure to read and comply with the plain language of the applicable procedural rules, which cannot constitute "excusable neglect."

### 5. *We are without jurisdiction to consider the merits of Pacific Transfer's appeal.*

■ Because the notice of appeal from the judgment in this case was not timely filed, we have no jurisdiction to consider that appeal. *Bacon*, 68 Haw. at 650, 727 P.2d at 1129. Nor may we consider the appeal from the trial court's denial of Pacific Transfer's post-trial motions for two reasons.

First, because those motions were untimely brought, the trial court was without jurisdiction. "A judgment rendered by a court without subject matter jurisdiction is void, [and] questions about the trial court's subject matter jurisdiction may be raised at any stage of the case[.]" *Wong v. Wong*, 79 Hawai‘i 26, 29, 897 P.2d 953, 956 (1995) (citing *Bush v. Hawaiian Homes Comm'n*, 76 Hawai‘i 128, 133, 870 P.2d 1272, 1277 (1994)). Second, even if the post-trial motions had been brought within the required ten days, they were not properly appealed. Pacific Transfer filed an "amended" notice of appeal on July 6, 1994, purporting to appeal from the July 1, 1994 denial of its post-trial motions. However, "[s]ince an amended notice of appeal relates back to the notice of appeal it purports to amend, it does not appeal an order, judgment, or decree entered subse-

quent to the notice of appeal it purports to amend." *Chan v. Chan,* 7 Haw.App. 122, 129, 748 P.2d 807, 811 (1987).

### III. *CONCLUSION*

Based on the foregoing, we hold that the trial court abused its discretion in granting Pacific Transfer's motion for extension of time to file a notice of appeal. We therefore reverse the trial court's order and dismiss the appeal for lack of jurisdiction.