26 P.3d 594

**Dorothy Susan HALL, Plaintiff–Appellee/Cross–Appellant,**

v.

**Bradley Ross HALL, Defendant–Appellant/Cross–Appellee.**

No. 22878.

Intermediate Court of Appeals of Hawai'i.

Jan. 19, 2001.

Reconsideration Denied Feb. 8, 2001.

As Amended Feb. 15, 2001.

Certiorari Granted March 12, 2001.

Paul A. Tomar and Keith M. Yonamine, Honolulu, (of counsel, Ashford & Wriston), on the briefs, for Defendant–Appellant/Cross–Appellee.

Robert M. Harris and Dana W. Smith, Honolulu, for Plaintiff–Appellee/Cross–Appellant.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant/Cross–Appellee Bradley Ross Hall (Father or Defendant) appeals the family court's June 30, 1999 Order Granting in Part and Denying in Part Defendant's Motion for Post Decree Relief Filed August 24, 1998 (June 30, 1999 Order). Plaintiff–Appellee/Cross–Appellant Dorothy Susan Hall (Mother or Plaintiff) cross-appeals the family court's September 30, 1999 Order granting Father's August 26, 1999 Motion for Extension of Time to File Notice of Appeal (September 30, 1999 Order).

We reverse the September 30, 1999 Order. Consequently, Father's October 4, 1999 Notice of Appeal of the family court's June 30, 1999 Order was untimely filed. Therefore, we dismiss Father's appeal of the June 30, 1999 Order for lack of appellate jurisdiction.

## BACKGROUND

. Mother and Father were married on June 24, 1983. Their son was born on April 18, 1987, and their daughter was born on April 24, 1992.

On April 6, 1996, Mother filed for a divorce from Father.

Pretrial Order No. 1 entered on October 22, 1996, stated that the parties had agreed to joint legal custody but that physical custody would be "shared residential, primary residence with Mother." Visitation was agreed to be "approx 50% with Father, language to be subject to further negotiation with parties/counsel." With respect to child support, "Father agrees not to seek reduction in support based on custody/visitation adjustments so long as he receives visitation per above. Actual [child support] amount in dispute.

Child support will be paid pursuant to guidelines without reduction based on extensive visitation."[1] One of the disputed legal issues was the "income for purposes of calculating child support[.]"

The trial was held on December 24, 1996. The court announced its decision on February 26, 1997. On March 18, 1997, Father filed two motions, one for post-decree relief (for sole custody) and the other for reconsideration or further hearing (regarding his income and the date of valuation of assets). The Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree) was entered on June 13, 1997.

The Divorce Decree states, in relevant part, as follows:

3. *CUSTODY OF MINOR CHILDREN.* Plaintiff and Defendant are awarded the joint legal custody of the minor children of the parties. Plaintiff is awarded sole physical custody of the minor children of the parties subject to Defendant's rights of liberal and extensive visitation as set forth in the schedule below. It is the intention of the parties that they share physical custody of the minor children with Defendant receiving up to one-half (½) of the time with both children during any calendar month. The parties shall meet two weeks prior to each month to prepare Defendant's visitation schedule. The visitation schedule for each month shall be flexible and shall take into consideration Defendant's work schedule. Visitation cannot be accumulated to exceed two (2) weeks per month.

... All decisions which materially affect the health, education and general welfare of the children of the parties hereto shall be made jointly by the parties. These decisions shall include, but not necessarily be limited to, those affecting the education, religion, medical care, residence and extracurricular activities of the children which are normally considered "routine" or of a "day-to-day" nature.

. . . .

5. *OTHER MATTERS.* Other matters covered by this Decree are as follows:

(a) *Child Support.* Defendant shall pay to Plaintiff as and for the support, maintenance and education of the parties' two (2) minor children the sum of [$2,535] per child per month for a total sum of [$5,070] per month. Said sum shall be payable in two (2) equal installments ... commencing on the 5th day of January, 1997. . . .

. . . .

All of the foregoing shall be subject to further order of the Court.

The Child Support Enforcement Agency is hereby made a party for the limited issue of child support.

As noted above, on March 18, 1997, Father filed his Motion and Affidavit for Post–Decree Relief (Motion for Relief) seeking sole legal and physical custody of the children. In his affidavit, Father stated, in relevant part:

It is apparent to me that the current custody arrangement is simply not working. Therefore, I am asking the court to award me temporary legal and physical custody, subject to Plaintiff's rights of reasonable and extensive visitation. I am also asking that a private custody evaluation be conducted (parties to share expenses) by a qualified evaluator chosen by the court. Such an evaluation should include psychological testing of either parent if deemed appropriate by the custody evaluator. If granted, child support should be adjusted on a temporary basis and pending the final resolution of this motion[.]

On April 9, 1997, the court entered an order referring the issues raised in Father's motion for a private Social Study/Custody Evaluation.

In Defendant's Trial Brief filed on October 13, 1997, Father's position was, in relevant part, as follows:

child[.]" Hawai'i Revised Statutes § 571–46 (Supp.1999). The agreement of the parties is not determinative. In our view, rare is the situation where a $\frac{50}{50}$ physical custody/visitation arrangement is in the best interests of the child.

---

**1.** This trade of more visitation for more child support causes the increase in visitation to be highly suspect. Custody/visitation of the children "should be awarded to either parent or to both parents according to the best interests of the

The custody evaluation was completed by Dr. Sue Lehrke. . . .

Following receipt of the report, filing of position statements and other matters, a pretrial conference was held on September 25, 1997. . . . The result of this conference was that the parties agreed to private mediation of custody, decision-making and time-sharing. Craig Robinson, Ph.D. was appointed mediator and post divorce guardian ad litem by mutual agreement.

Initially, this action was brought for a change of custody, but not of time-sharing. Defendant's motion requested that sole legal and physical custody be awarded to him, but that the children continue to divide their time equally with each parent. In filing this motion, defendant's objectives were twofold: (1) to fully divest plaintiff of the ability to make unilateral decisions concerning the children and (2) to obtain relief in consequence of plaintiff's breach of the promises she had given him in consideration for his promise to pay "full board" child support. The first issue will now be mediated. The second is what remains for trial.

Defendant submits that the critical issues are as follows:

1. Defendant seeks to conform his child support to the actual time-sharing arrangements. There is no language in the decree expressly incorporating the agreement to pay "full board" child support notwithstanding actual time-sharing. Does this agreement preclude the court from modifying support to conform to existing or future time-sharing?

2. Assuming that there is an enforceable agreement not to reduce child support based on actual time-sharing, does that agreement preclude reduction of child support if legal or physical custody is changed?

3. Assuming that there is an otherwise enforceable agreement, is defendant entitled to recission by reason of material breach by plaintiff?

On November 19, 1997, District Family Court Judge Karen Radius entered an Order Granting in Part Plaintiff's Oral Motion to Dismiss. In relevant part, it stated: "Breach of an agreement is not a legal basis to change child support." "Accordingly, Plaintiff's motion [to dismiss] is granted insofar as it pertains to Dismissal of Defendant's Motion to Revise Child Support on the basis of breach of agreement."

On August 24, 1998, Father filed his second Motion and Affidavit for Post–Decree Relief (1998 Motion for Relief) seeking "to modify his agreement to pay excess child support, based on the sudden, unforeseen *halving* of his net salary at Straub when Straub imposed two pay-cuts on him. Father also sought reimbursement from Mother for overpayments in child support." (Emphasis in original.)

In the November 24, 1998 Motion to Dismiss Part of Defendant's Motion to Modify Child Support, Mother argued "that the doctrines of res judicata and collateral estoppel barred Father from relitigating the amount of child support payments based on his extensive visitation rights." The family court agreed with Mother. The December 10, 1998 Decision and Order entered by District Family Court Judge R. Mark Browning (Judge Browning) states, in relevant part: "PLAINTIFF'S MOTION TO DISMISS PART OF DEFENDANT'S MOTION TO MODIFY CHILD SUPPORT is granted. Trial will be held on Monday, December 14, 1998 at 8:30 a.m. and will be solely on the financial issues. Issues of visitation and custody will be bifurcated." The "financial issues" involved "the overpayment of child support payments to Mother, the credit owed to Father, and how much relief should be granted to Father based on the methodology of calculating child support payments under the Guidelines." (Emphasis omitted.)

After a trial on the limited issues, Judge Browning's June 30, 1999 Order "1) denied the motion to terminate alimony; 2) granted in part the request to modify child support; and 3) left the child custody dispute pending." Child support was

reduced retroactively to the date of the filing by Defendant of his [1998 Motion for Relief], provided that Defendant's request to modify the methodology of calculating child support is denied. The parties shall

continue to apply Amended Child Support Guidelines ("ACSGL") without taking into consideration any excess visitation exercised by Defendant. Based upon the timing of various reductions in Defendant's gross income, both prior to and during these proceedings, and based upon the promulgation of ACSGL's during these proceedings, child support shall be modified in stages as follows:: [sic]

a) Commencing September 5, 1998, through January 4, 1999, . . . $4,070.00 per month. . . .

b) Commencing January 5, 1999, through April 4, 1999, . . . $4,230 per month. . . .

c) Commencing April 5, 1999 and continuing through June 5, 1999, . . . $3,650.00 per month. . . .

d) Commencing June 5, 1999 and continuing until further order of the Court, . . . $3,890.00 per month[.]

Father's Opening Brief states that "[o]n July 30, 1999, Father, fully cognizant of the filing deadline, and in good faith compliance with [Hawai'i Rules of Appellate Procedure (HRAP)] Rule 4(a)(5), timely filed an Ex Parte Motion for Extension of Time Within Which To File Notice of Appeal[.]" The statement that this motion was "filed" on July 30, 1999, is wrong. It was received by the family court on that date and that date was a Friday. The reasons for the extension request were that "Defendant is further exploring alternatives to an appeal," "[t]he appeal under consideration involves complex and novel issues," "this appeal is further complicated by issues of *res judicata,*" and "the recent shocking injuries to Plaintiff's counsel[.]" This motion was denied by District Family Court Judge Diana Warrington on July 30, 1999, and the document was filed on August 3, 1999.

On August 26, 1999, Father filed a Motion for Extension of Time to File Notice of Appeal. In his accompanying affidavit, counsel for Father stated, in relevant part, as follows:

7. Ever since the Honorable R. Mark Browning first entered in December 1998 his Minute Order on Defendant's Motion for Post–Decree Relief, Defendant has actively considered and contemplated filing an Appeal. Even Judge Browning recognized that this case presented an excellent appealable issue to whichever side lost on the merits, and Judge Browning in fact invited both parties to submit findings of fact and conclusions of law, even *before* the Notice of Appeal was filed. Counsel declined to do so at that time, reserving the right to do so in the future.

8. On several occasions during the undersigned's career in family law, *ex parte* relief has been sought by the undersigned pursuant to Rule 4(a)(5), *Hawai'i Rules of Appellate Procedure,* and, in every instance, an extension has been granted on an *ex parte* basis.

9. To the extent that counsel erroneously believed that such a disposition would occur upon this particular filing, such belief constituted excusable neglect.

10. Counsel for Defendant could well have filed a Notice of Appeal in lieu of seeking an extension for such filing, but doing so would truly have been inconsistent with the statements made in the Affidavit of Paul A. Tomar, in which it was truthfully averred that Defendant hoped to find an alternative to avoiding the cost and time consumption of an appeal. Counsel's decision to defer the filing of the Notice of Appeal may also have constituted excusable neglect.

(Emphasis in original.)

At the September 30, 1999 hearing, District Family Court Judge Allene Suemori stated, in relevant part:

Okay. Having heard the arguments of counsel, the court having reviewed the case (indiscernible) . . . .—also noting the arguments regarding prejudice, the Court's going to—over objections of counsel is going to grant the Defendant's motion for extension of time to file notice.

Court's going to find there's been excusable neglect. The Court's going to find that there was actually a kind of misunderstanding of what was going on.

The family court's September 30, 1999 Order states that "[t]he Court finds that conduct of counsel constituted excusable neglect."

Father then appealed the June 30, 1999 Order, filing his Notice of Appeal on October 4, 1999.

On October 18, 1999, Mother cross-appealed the June 30, 1999 Order and the September 30, 1999 Order.

On June 19, 2000, Judge Browning entered Findings of Fact and Conclusions of Law.[2] Conclusion of Law No. 6 states as follows:

> Defendant's August 26, 1999, Motion for Extension of Time to File Notice of Appeal was granted based on his showing that excusable neglect caused the Notice of Appeal from the Order Granting in Part and Denying in Part Defendant's Motion for Post Decree Relief Filed August 24, 1998, to not be filed within the 30–day period running from the entry of that Order on June 30, 1999, as required by Rule 4(a)(1), HRAP. Therefore, an extension of the time for filing Defendant's Notice of Appeal was warranted pursuant to Rule 4(a)(5), HRAP.

## RELEVANT RULES OF LAW AND PROCEDURE

"An appellant's failure to file a timely notice of appeal is a jurisdictional defect that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion." *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986) (internal quotation marks and brackets omitted). The time for filing a notice of appeal is governed by HRAP Rule 4(a), which provides, in relevant part:

> (1) In a civil case in which an appeal is permitted by law as of right . . ., the notice of appeal required by Rule 3 shall be filed by a party with the clerk of the court . . . appealed from within 30 days after the date of entry of judgment or order appealed from.

**2.** The findings and the question whether the family court judge who entered the judgment/order should have been the family court judge who entered the relevant findings and conclusions are not issues in this appeal.

**3.** In light of the ruling that "excusable neglect" requires "some mistake or inadvertence within the control of the movant" and that "good

> . . . .

> (5) The court or agency appealed from, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion actually filed not later than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(4) of this Rule 4. Any such motion which is filed before expiration of the prescribed time may be ex parte unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with the rules of the court or agency appealed from[.]

The Hawai'i Supreme Court further clarified this rule in *Enos v. Pacific Transfer & Warehouse, Inc.*, 80 Hawai'i 345, 352–3, 910 P.2d 116, 123–4 (1996), stating that

> when considering a motion brought pursuant to HRAP Rule 4(a)(5), the trial court must first determine the cause of the delay in filing the notice of appeal. If that cause is beyond the movant's control, the motion may be granted upon a showing of "good cause." If the cause of the delay is some mistake or inadvertence within the control of the movant, the motion may be granted only upon a showing of "excusable neglect."[3]

> . . . .

> Although there have been cases suggesting that a misinterpretation of the rules can constitute "excusable neglect," . . ., only "plausible misconstruction, but not mere ignorance, of the law or rules" rises to the level of excusable neglect. [*Lorenzen v. Employees Retirement Plan of Sperry and Hutchinson Co.*, 896 F.2d 228, 232 (7th Cir.1990) (citation omitted) ].

(Footnote added.)

cause" requires a cause that is "beyond the movant's control," it must be concluded that (1) a desire for more time to seek settlement before incurring the cost of filing an appeal is not "good cause" for extending the time to file a notice of appeal; and (2) rarely will there be a situation where a motion based on that desire and presented within the first 30 days will be validly granted.

## ESSENTIAL FACTS

■ The June 30, 1999 Order was appealable.[4] On July 30, 1999, ignoring the requirement of "good cause" beyond his control or "excusable neglect" within his control, counsel submitted his ex parte motion for extension of time to file notice of appeal. The motion was denied on July 30, 1999, and the order was filed on August 3, 1999. On August 25, 1999, alleging "excusable neglect" as the ground, counsel submitted his second motion for extension of time to file notice of appeal. On September 30, 1999, after a hearing, the family court decided that "conduct of counsel constituted excusable neglect" and authorized the October 4, 1999 filing of the notice of appeal.

## STANDARD OF REVIEW

■ The circuit court's grant of a HRAP Rule 4(a)(5) motion will not be reversed absent an **abuse of discretion**, and, ordinarily, a **finding** of "excusable neglect" will not be disturbed. In this case, however, the circuit court's **conclusion** that there was "excusable neglect" is legally and factually insupportable. Nothing in the record indicates that the failure to file a timely notice of appeal was occasioned by anything other than [counsel's] purported confusion regarding the time that a judgment is deemed "entered," and the court expressed, in no uncertain terms, its disbelief of that reason. . . .

We therefore hold that the trial court **abused its discretion** by granting the motion to extend time for filing a notice of appeal because the failure to timely file the appeal was caused by counsel's failure to read and comply with the plain language of the applicable procedural rules, which cannot constitute "excusable neglect."

*Enos*, 80 Hawai'i at 355, 910 P.2d at 126 (emphases added).

■ As *Enos* indicates, whether the question of "excusable neglect" is a question of fact, or a question of law, or a matter of

discretion has not been clearly answered. In our view, because there can be only one right answer to the question whether counsel's "neglect" was "excusable neglect," it is a question of law. Therefore, the standard of appellate review is the right/wrong standard.

## GENERAL QUESTION ON APPEAL

After the family court denied Father's first request for an extension of time to file a notice of appeal, did the family court reversibly err when it subsequently granted Father's second request for an extension of time to file a notice of appeal?

## SPECIFIC QUESTION ON APPEAL AND ANSWER

■ The applicable rule authorized that "[t]he court or agency appealed from, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal." Do the following facts constitute "excusable neglect" authorizing the family court to "extend the time for filing a notice of appeal upon motion actually filed not later than 30 days after" the original 30 days authorized to file a timely notice of appeal: the filing, on the 30th and last day allowed to file a timely notice of appeal, of a motion for an extension of time to file a notice of appeal, and the non-filing of a notice of appeal, both based on the unfulfilled expectation that the court would grant the motion? The answer is no.

## DISCUSSION

First, there was no neglect. Counsel intentionally filed an ex parte motion for extension on the 30th and last day allowed to file a timely notice of appeal and did not file a notice of appeal. At the hearing on the motion, counsel stated he knew about the deadlines and made a conscious decision to wait until the last moment to file the ex parte motion. He emphasized that he was not neglectful and "complied with the rules by seeking an ex-parte extension."

Second, in light of the express provision in the rule that the court "may extend the time

4. Hawai'i Revised Statutes (HRS) §§ 571–54 (1993) and 641–1(a) (1993) authorize appeals of final orders of the family court. A post-judgment order is an appealable final order under HRS

§ 641–1(a) if the order finally determines the post-judgment proceeding. *Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.*, 68 Haw. 368, 369–70, 714 P.2d 936, 937 (1986).

for filing a notice of appeal," we conclude that counsel's belief that his motion for an extension would be granted was an unreasonable belief and not excusable.

Third, absent information from the court that the motion for extension was granted or would be granted before the end of the 30th day, counsel's failure to file a notice of appeal before the end of that 30th day was not excusable.

Fourth, the first motion alleged "good cause." The second motion alleged "excusable neglect" for relying on the erroneous belief that the first motion would be granted. Assuming there can be one or more situations where a party, whose first motion for extension of time to file a notice of appeal was both presented and denied on the 30th day, may on the 57th day file a valid second motion for extension of time to file notice of appeal, this is not one of them.

## CONCLUSION

Accordingly, we reverse the family court's September 30, 1999 Order granting Defendant Appellant/Cross–Appellee Bradley Ross Hall's August 25, 1999 Motion for Extension of Time to File Notice of Appeal. It follows that Father's October 4, 1999 Notice of Appeal of the family court's June 30, 1999 Order Granting in Part and Denying in Part Defendant's Motion for Post–Decree Relief Filed August 24, 1998 was untimely filed. Consequently, we dismiss Father's appeal of the June 30, 1999 Order for lack of appellate jurisdiction.