267 P.3d 676

Jason Lanakila CABRAL; the Estate of Joseph Pu Kaikala; Lynda Evadna Kaikala, individually, as Special Administratrix of the Estate of Shawn Kaikala, and as Guardian Ad Litem for minors: Shantel Kaiuola Cabral, Mark Kale Cabral, and Iokepa John Kaikala; John E. Krause, individually and as Guardian Ad Litem for minors: Kahekili John Krause, Keanu Kaikala Krause, Kawena Kaikala Krause, Plaintiffs–Appellants,

v.

STATE of Hawai'i, Defendant/Cross–Claim Plaintiff/Cross–Claim Defendant/Appellee,

Joni Marie Scott, Defendant/Cross–Claim Defendant/Cross–Claim Plaintiff,

and

John Does 1–20, Defendants.

No. 28669.

Intermediate Court of Appeals of Hawai'i.

July 28, 2011.

Joy A. San Buenaventura, on the briefs, for Plaintiffs–Appellants.

Donna H. Kalama, Deputy Attorney General, on the briefs, for Defendant–Appellee.

FUJISE and LEONARD, JJ., with NAKAMURA, C.J. dissenting.

Opinion of the Court by FUJISE, J.

Plaintiffs–Appellants Jason Lanakila Cabral, the Estate of Joseph Pu Kaikala, Lynda Evadna Kaikala, Shantel Kaiuola Cabral, Mark Kale Cabral, Iokepa John Kaikala, John E. Krause, Kahekili John Krause, Keanu Kaikala Krause, and Kawena Kaikala Krause (Plaintiffs) appeal from the judgment entered by the Circuit Court of the Third Circuit, Hilo Division (circuit court)[1] in favor of Defendant/Cross–Claim Plaintiff/Cross–Claim Defendant/Appellee State of Hawai'i (State).

I.

This appeal stems from a July 20, 2000 fatal car accident, resulting in the death of Shawn Kaikala (Decedent) on Highway 11 in the County of Hawai'i. Plaintiffs are Decedent's boyfriend and family members. The accident occurred when the vehicle Decedent was operating was struck by another vehicle driven by Joni Marie Scott, Defendant/Cross–Claim Defendant/Cross–Claim Plaintiff (Scott). The cause of the accident was allegedly the speed and condition of Scott's vehicle, oversteering by Scott, and wet road conditions.

Plaintiffs filed a civil complaint against Scott and the State on October 16, 2001. Plaintiffs' complaint asserted claims against the State and Scott for negligence and wrongful death. Plaintiffs settled their claims with Scott before trial, however, Scott remained a nominal defendant for purposes of apportioning fault.

A seven-day bench trial began on July 10, 2006, and on November 1, 2006, the circuit court entered its Findings of Fact and Conclusions of Law, ruling that Plaintiffs failed to prove the State was negligent in designing or maintaining Highway 11. The circuit court entered judgment in favor of the State and against Plaintiffs on April 20, 2007, and expressly dismissed all other claims. Ten days later, on April 30, 2007, Plaintiffs filed a motion for reconsideration pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 59 and 60(e). The circuit court denied Plaintiffs' motion on June 7, 2007.

On July 6, 2007, the parties submitted a "Stipulation to Extend Time to File Notice of Appeal" (July 6 Stipulation) prepared by counsel for Plaintiffs. On the same day, the circuit court approved the parties' stipulation, which purported to extend the time for Plaintiffs to file a notice of appeal by two weeks. The stipulation did not assert grounds nor include findings regarding the grounds for the extension of time.[2]

By way of a motion dated July 18, 2007, but not filed until September 7, 2007, Plaintiffs presented their Ex–Parte Motion to Extend Time to File Notice of Appeal (July 18 Ex–Parte Motion).[3] Grounds for the extension were contained in the attached declaration of counsel: The parties were involved in settlement negotiations and a "motion to withdraw" was scheduled to be heard on September 5, 2007.[4]

1. The Honorable Glenn S. Hara presided.

2. The stipulation read, in its entirety:

**STIPULATION TO EXTEND TIME TO FILE NOTICE OF APPEAL**
Plaintiffs, above-named, by and through their attorney, JOY A. SAN BUENAVENTURA; and the State of Hawaii, by and through its

[Signature]
JOY A. SAN BUENAVENTURA
Attorney for Plaintiffs

APPROVED AND SO ORDERED:
[Signature]
JUDGE OF THE ABOVE-ENTITLED COURT

3. The July 18 Ex–Parte Motion was also stamped as received on July 18, 2007.

4. The declaration of counsel read, in pertinent part,

attorney, Deputy Attorney General ROBIN KISHI hereby stipulate to the extension of time to file a notice of appeal of two weeks.
Dated: Hilo, Hawaii, July 6, 2007.

[Signature]
ROBIN KISHI
Deputy Attorney General Attorney for the State of Hawaii

3. The Plaintiffs are considering accepting the

On July 23, 2007, the due date of the purported two-week extension deadline, Plaintiffs filed a notice of appeal from the April 20, 2007 judgment.[5] On September 7, 2007, having found "[g]ood cause appearing from the motion," the circuit court signed and filed the Order Granting Ex–Parte Motion, extending the time to file the notice of appeal until August 8, 2007.[6]

## II.

■ Although the State has not challenged this court's jurisdiction, "[i]t is axiomatic that we are 'under an obligation to ensure that [we have] jurisdiction to hear and determine each case and to dismiss an appeal on [our] own motion where [we] conclude [we] lack[ ] jurisdiction.'" *Brooks v. Dana Nance & Co.*, 113 Hawai'i 406, 412, 153 P.3d 1091, 1097 (2007) (quoting *BDM, Inc. v. Sageco, Inc.*, 57 Haw. 73, 73, 549 P.2d 1147, 1148 (1976)). An untimely appeal is one such defect requiring dismissal for lack of jurisdiction "that can neither be waived by the parties nor disregarded by the court in the exercise of judicial discretion." *Wong v. Wong*, 79 Hawai'i 26, 29, 897 P.2d 953, 956 (1995) (quoting *Bacon v. Karlin*, 68 Haw. 648, 650, 727 P.2d 1127, 1129 (1986)); HRAP Rule 26(b) ("[N]o court or judge or justice is authorized to change the jurisdictional requirements contained in Rule 4 of [the HRAP]").

Hawaii Revised Statutes (HRS) § 641–1(c) (1993), provides that in civil matters, "[a]n appeal shall be taken in the manner and within the time provided by the rules of court." Rule 4(a)(1), HRAP, requires civil litigants to file a notice of appeal within thirty days after entry of an appealable final judgment.

However, prior to expiration of the thirty-day prescribed time period, appellants may request an extension of time under the following terms:

> The court or agency appealed from, upon a showing of good cause, may extend the time for filing a notice of appeal *upon motion filed* within the time prescribed by subsections (a)(1) through (a)(3) of this rule. However, *no such extension shall exceed 30 days past such prescribed time.* An extension motion that is filed before the expiration of the prescribed time may be ex parte unless the court or agency otherwise requires.

HRAP Rule 4(a)(4)(A) (emphasis added).

■ In the instant case, the circuit court's April 20, 2007 judgment in favor of the State and expressly dismissing all other claims, constituted an appealable final judgment under HRCP Rule 58. *See Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 119–20, 869 P.2d 1334, 1338–39 (1994) (holding that a final judgment in a case involving multiple claims "must, on its face, show finality as to all claims against all parties"). Plaintiffs timely filed their April 30, 2007 Motion for Reconsideration pursuant to HRCP Rule 59(e), and effectively extended the initial thirty-day period for filing their notice of appeal, until this motion was decided or 90 days elapsed, whichever came first. HRAP Rule 4(a)(3). When the circuit court denied this motion on June 7, 2007, it triggered a new thirty-day deadline, making Plaintiffs' notice of appeal due on July 7, 2007.

On July 6, 2007, one day prior the expiration of this new deadline, the parties attempted to extend the deadline via their submitted stipulation, which the circuit court

---

State's offer and not appeal.

    4. We are awaiting State's draft of the Stipulation.

    5. There is a pending hearing on a Motion to Withdraw scheduled on September 5, 2007.

5. On July 19, 2007, Joy A. San Buenaventura, attorney for Plaintiffs, filed a Motion to Withdraw as Counsel for Plaintiff with regard to her representation of Mark Kale Cabral. She filed a Second Amended Motion to Withdraw as Counsel for Plaintiff Mark Kale Cabral which was

granted on November 23, 2007. Ms. San Buenaventura remains counsel of record for the remaining plaintiffs.

6. The new deadline set in the proposed order was September 19, 2007 but was amended by hand to August 8, 2007. However, a trial court is authorized to extend the time for a notice of appeal for a maximum of thirty days. Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(4). The extension to August 8, 2007 would have been a thirty-two day extension.

approved. Plaintiffs filed their notice of appeal on July 23, 2007, forty-six days after the denial of their motion for reconsideration, and on the due date of the purported two-week extension.

In furtherance of our obligation to ensure jurisdiction for this appeal exists, this court ordered the parties to file supplemental briefs on the subject of jurisdiction. In their supplemental brief, Plaintiffs argue that, although no reasons appear on the July 6 Stipulation, the reasons stated in their July 18 Ex–Parte Motion, note 4 *supra*, support their position that good cause supported the approval of the July 6 Stipulation. The State argues that consideration of the State's settlement offer was not beyond Plaintiffs' control and thus does not constitute good cause.

HRAP Rule 4(a)(4) clearly states that *the court* may extend the deadline for a notice of appeal *upon motion filed.* The rule does not authorize the parties to make this decision but requires a motion. This is sound procedure, if for no other reason than a motion requires that the grounds for the requested relief be stated. HRCP Rule 7(b). The parties thus utilized, and the circuit court approved, an unauthorized procedural device.

More importantly, the purported extension was substantively insufficient. HRAP 4(a)(4)(A) governs extensions of time to file a notice of appeal in a civil case. The rule requires that an appellant show, and the court find, "good cause" for granting a motion for extension of time to file a notice of appeal: "The court or agency appealed from, *upon a showing of good cause,* may extend the time for filing a notice of appeal upon motion filed within the time prescribed[.]" HRAP Rule 4(a)(4)(A) (emphasis added).

The Hawai'i Supreme Court has made clear that this good cause showing is a necessary prerequisite for the granting of an extension of time to file a notice of appeal. *Enos v. Pac. Transfer & Warehouse, Inc.*, 80 Hawai'i 345, 352, 910 P.2d 116, 123 (1996) ("Thus, when considering a motion brought pursuant to HRAP Rule 4[ ], the trial court must first determine the cause of the delay in filing the notice of appeal ... the motion may be granted upon a showing of 'good cause.' ").

■ Moreover, the necessary good cause showing itself "requires a cause that is 'beyond the movant's control.' " *Hall v. Hall*, 96 Hawai'i 105, 110 n. 3, 26 P.3d 594, 599 n. 3 (App.), *aff'd in part, and vacated in part on other grounds,* 95 Hawai'i 318, 319, 22 P.3d 965, 966 (2001); *see Enos,* 80 Hawai'i at 352, 910 P.2d at 123 ("If that cause is beyond the movant's control, the motion may be granted upon a showing of good cause.") (internal quotation marks omitted).[7]

In the instant case, the July 6 Stipulation does not mention any justification for the extension, let alone one demonstrating good cause. *Enos,* 80 Hawai'i at 352, 910 P.2d at 123. On its face, the Stipulation therefore fails to satisfy the good cause standard required for granting an extension of time. Plaintiffs maintain that the reasons supporting good cause are contained in their subsequent, ex-parte motion. However, there is nothing in the record that establishes the same reasons existed at the time the stipulation was proffered. Thus, the only justification for the July 6 Stipulation we can glean from the record is that the parties agreed to it. Mutual desire for an extension of time is insufficient, standing alone, to constitute the

---

**7.** At the time of the *Enos* and *Hall* decisions, the governing procedural rule was HRAP Rule 4(a)(5), which differed from the current rule insofar as it provided two standards for the granting of extensions prior to the expiration of the initial time to file the notice of appeal, namely, excusable neglect and good cause. HRAP Rule 4(a)(5) (1985). In *Enos,* the Hawai'i Supreme Court held that whether the "good cause" standard or "excusable neglect" standard applied depended not on when the motion for extension was filed, but upon the reason for the delay. 80 Hawai'i at 352, 910 P.2d at 123.

The current HRAP Rule 4(a)(4) makes clear that the good cause standard applies to motions brought before the expiration of the initial thirty-day deadline and that the excusable neglect standard must be met where the motion is brought after the expiration of the time to bring an appeal. HRAP Rule 4(a)(4)(A) and 4(a)(4)(B). Despite the revised structure of the rules, the language and standards governing extension requests prior to expiration of the deadline for filing a notice of appeal—requiring a good cause finding—remains the same. Cases discussing the good cause standard under the previous rules are thus equally relevant under the current HRAP provisions.

good cause showing required for granting an extension. *See, e.g., Hall,* 96 Hawai'i at 110 n. 3, 26 P.3d at 599 n. 3 (concluding that parties' desire to carry on ongoing settlement negotiations did not constitute good cause for an extension of time to file a notice of appeal). In any event, the appellate courts of this state have already held that time to complete settlement negotiations is not "good cause" to grant an extension of time. *Hall,* 96 Hawai'i at 110 n. 3, 26 P.3d at 599 n. 3 ("(1) a desire for more time to seek settlement before incurring the cost of filing an appeal is not 'good cause' for extending the time to file a notice of appeal; and (2) rarely will there be a situation where a motion based on that desire and presented within the first 30 days will be validly granted.").

■ The circuit court erred [8] in approving the July 6 Stipulation without requiring a showing of good cause.

Next, we turn to consideration of the circuit court's September 7, 2007 order granting Plaintiffs' July 18 Ex–Parte Motion. This motion was proffered to the court after the July 7, 2007 deadline for filing their notice of appeal had passed. The circuit court was authorized to grant an extension of up to 30 days upon a showing of excusable neglect. HRAP Rule 4(a)(4)(B).[9] The *Enos* court noted that the excusable neglect standard is applicable "[i]f the cause of the delay is some mistake or inadvertence within the control of the movant." *Enos,* 80 Hawai'i at 352, 910 P.2d at 123. So far, Hawai'i cases construing excusable neglect have dealt with misconstruction or misapplication of the law. *See Enos, id.,* (misinterpretation of the law governing the appealable event); *Hall,* 96 Hawai'i at 112, 26 P.3d at 601 ("relying on the erroneous belief that the first motion would be granted").

■ Here, Plaintiffs' July 18 Ex–Parte Motion was based on the continued efforts at settlement and a pending motion to withdraw. The circuit court did not decide whether these reasons constituted excusable neglect but instead applied the good cause standard to these reasons. However, the nature of these reasons does not establish that mistake, inadvertence or neglect was involved. Rather, these reasons merely involve a request that the deadline be postponed while other events in the case are attended to.

Plaintiffs cite *Local Union No. 12004, United Steelworkers of America v. Massachusetts,* 377 F.3d 64 (1st Cir.2004) in support of their argument that their reasons in this case constitute excusable neglect. There, the First Circuit found no abuse of discretion in the district court's grant of an extension based on excusable neglect where the attorney prepared but failed to timely file his client's notice of appeal because he was "preoccupied by the need to care for his infant son, who was severely ill." *Id.* at 72. However, that case is clearly distinguishable as not only did the district court apply the proper standard, the reason cited by counsel there did involve inadvertence or neglect.

Finally, Plaintiffs argue that in *Enos,* the Hawai'i Supreme Court has approved the more liberal interpretation of excusable neglect adopted by the United States Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and urges application of the four-part test constructed by Supreme Court. However, we do not read *Enos* to have gone so far, primarily because, as the *Enos* court observed, the concept of excusable neglect under the federal rules encompassed reasons that were in,

---

**8.** While the determination of good cause is reviewed under an abuse of discretion standard, the evaluation of the trial court's interpretation of the law is reviewed *de novo. Enos,* 80 Hawai'i at 349, 910 P.2d at 120.

**9.** HRAP Rule 4(a)(4)(B) provides:

  (B) Requests for extensions of time after expiration of the prescribed time. The court or agency appealed from, upon a showing of excusable neglect, may extend the time for filing the notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(3) of this rule. However, no such extension shall exceed 30 days past the prescribed time. Notice of an extension motion filed after the expiration of the prescribed time shall be given to the other parties in accordance with the rules of the court or agency appealed from.

We note that there was no certificate of service attached to the July 18 Ex–Parte Motion.

and beyond, the movant's control. *Enos*, 80 Hawai'i at 352, 910 P.2d at 123 ("both intervening circumstances beyond the party's control and neglect on the part of the party are encompassed within the [Supreme] Court's interpretation of 'excusable neglect'.") The Hawai'i Supreme Court in *Enos* cited to *Pioneer Investment*, not for its four-part test for evaluating excusable neglect, but to illustrate the Supreme Court implicitly rejected the view of the majority of federal appellate courts that the choice of standard—good cause or excusable neglect—was dependent on the timing of the extension request. Furthermore, the reasons for the extension under consideration in *Enos* involved a misconstruction of the rules that, as a matter of law, did not rise to the level of excusable neglect. *See Enos*, 80 Hawai'i at 354, 910 P.2d at 125 ("Nor does the United States Supreme Court's decision in *Pioneer Investment*, which is regarded as having relaxed the 'excusable neglect' standard, ... suggest that 'excusable neglect' now encompasses ignorance of the rules.") and *Hall*, 95 Hawai'i at 320, 22 P.3d at 967 ("we ruled in *Enos* that, as a matter of law, 'only plausible misconstruction, but not mere ignorance, of the law or rules rises to the level of excusable neglect.' ").

### III.

For the foregoing reasons, the appeal is dismissed for lack of jurisdiction.

### Dissenting Opinion by NAKAMURA, C.J.

I respectfully dissent. In this case, the trial court "approved and so ordered" a stipulation Plaintiffs–Appellants obtained to extend the deadline for filing their notice of

appeal for two weeks. The stipulation was secured by Plaintiffs–Appellants and ordered by the trial court *before* the original deadline[1] for filing the notice of appeal had expired. Thus, if the trial court had denied the stipulation for extension, Plaintiffs–Appellants could have filed their notice of appeal before the original deadline. In reliance on the trial court's extension order, Plaintiffs–Appellants filed their notice of appeal after the original deadline and within the extended deadline.[2]

I agree with the majority that the trial court erred in approving the stipulation and ordering the extension because there was no showing of good cause for the extension. However, in the limited circumstances presented here—where (1) an appellant seeks and obtains a court order extending the filing deadline *before* the expiration of the original deadline; (2) the appellant files the notice of appeal in compliance with the court's order; and (3) there is no showing that the extension prejudiced the appellee—I would recognize an equitable exception to the strict enforcement of time limits for filing a notice of appeal.

### I.

The United States Supreme Court had previously recognized such an equitable exception, known as the unique circumstances doctrine, to the time limits under federal law for filing a notice of appeal. *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962); *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964). In *Harris*, the trial court, prior to the expiration of the original

---

1. With respect to Plaintiffs–Appellants, I am using the term "original deadline" to refer to the deadline to file their notice of appeal that Plaintiffs–Appellants faced after the trial court entered its order denying their motion for reconsideration.

2. The Plaintiffs–Appellants' original deadline for filing their notice of appeal was July 9, 2007, based on the following calculation: (1) the trial court entered its order denying Plaintiffs–Appellants' timely motion for reconsideration on June 6, 2007; (2) under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(3) (2006), a party has thirty days to file a notice of appeal after the

entry of an order disposing of a timely motion for reconsideration; (3) however, because the thirty-day period ended on July 7, 2007, which was a Saturday, Plaintiffs–Appellants' original deadline for filing their notice of appeal became the following Monday, or July 9, 2007, pursuant to HRAP 26(a) (2000). On July 6, 2007, the trial court approved the parties' stipulation and ordered a two-week extension of the time to file a notice of appeal, which extended the deadline to July 23, 2007. Plaintiffs–Appellants filed their notice of appeal on July 23, 2007, within the extended deadline ordered by the trial court.

thirty-day deadline, granted the appellant a two-week extension to file its notice of appeal. *Harris,* 371 U.S. at 216, 83 S.Ct. 283. Appellant filed its notice of appeal after the original deadline had expired but within the new extended deadline. *Id.* The Court of Appeals dismissed the appeal for lack of appellate jurisdiction, ruling that there had been no showing of excusable neglect based on the failure of a party to learn of the entry of the judgment, which was required by the applicable statute and rule to extend the time for appeal, and thus, the appeal was untimely. *Id.*

The Supreme Court disagreed with the Court of Appeals, holding as follows:

> In view of the obvious great hardship to a party who relies upon the trial judge's finding of "excusable neglect" prior to the expiration of the 30–day period and then suffers reversal of the finding, [the trial judge's finding] should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling. The judgment is vacated and the case is remanded to the Court of Appeals so that petitioner's appeal may be heard on its merits.

*Id.* at 217, 83 S.Ct. 283.

In *Thompson,* the appellant served post-trial motions, including a new trial motion, two days late. *Thompson,* 375 U.S. at 385, 388, 84 S.Ct. 397. The trial court, however, "specifically declared that the 'motion for new trial' was made 'in ample time.'" *Id.* at 385, 84 S.Ct. 397. If any question had been raised about the timeliness of appellant's post-trial motions, the appellant could have filed his notice of appeal within the original deadline. *Id.* at 386, 84 S.Ct. 397. Relying on the trial court's assurance that his new trial motion had been made "in ample time," appellant filed his notice of appeal after the original deadline but within the extended time applicable to timely post-trial motions. *Id.* at 386, 84 S.Ct. 397. The Court of Appeals dismissed the appeal on the ground that it was untimely. *Id.* at 385, 84 S.Ct. 397.

In vacating the Court of Appeal's Judgment, the Supreme Court held:

> The instant cause fits squarely within the letter and spirit of *Harris.* Here, as there, petitioner did an act which, if properly done, postponed the deadline for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline. And here, as there, the Court of Appeals concluded that the District Court had erred and dismissed the appeal. Accordingly, in view of these "unique circumstances," *Harris Truck Lines, Inc., v. Cherry Meat Packers, Inc., supra,* 371 U.S. at 217, 83 S.Ct. at 285, 9 L.Ed.2d 261, we grant the writ of certiorari, vacate the judgment, and remand the case to the Court of Appeals so that petitioner's appeal may be heard on the merits.

*Id.* at 387, 84 S.Ct. 397.

## II.

Recently, in *Bowles v. Russell,* 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), the United States Supreme Court, in a five to four decision, overruled *Harris* and *Thompson,* "to the extent they purport to authorize an exception to a jurisdictional rule." The Supreme Court majority concluded that "[b]ecause this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." *Id.*

However, I agree with the four dissenting Justices who concluded that (1) the Court did have the authority to recognize an equitable exception to a time limit for filing a notice of appeal and (2) should do so in *Bowles,* where the appellant relied on an extension order issued by the trial court in filing his notice of appeal that was later deemed to be untimely. *Id.* at 220–21, 127 S.Ct. 2360 (Souter, J., dissenting). The dissent reasoned that "it certainly seems reasonable to rely on an order from a federal judge." *Id.* at 220, 127 S.Ct. 2360.

In the present appeal, it was reasonable for Plaintiffs–Appellants to rely on the trial court's order that was issued before the original deadline expired and extended for two weeks their deadline for filing their notice of appeal. Had the trial court denied the stipulation for the two-week extension, Plaintiffs–Appellants could have filed their notice of appeal before the original deadline expired. We require and expect parties to comply with court orders. We should permit them to rely on court orders in determining whether the time for filing a notice of appeal has expired.

### III.

*Enos v. Pac. Transfer & Warehouse, Inc.,* 80 Hawai'i 345, 910 P.2d 116 (1996), the principal case on which the majority relies, is distinguishable. In *Enos, after* the original thirty-day deadline for filing its notice of appeal had expired, the appellant filed a motion for extension of time to file its notice of appeal. *Id.* at 347–48, 910 P.2d at 118–19. The trial court granted the motion pursuant to the former version of Hawai'i Rules of Appellate Procedure Rule 4(a)(5), which authorized a court to extend the deadline for filing a notice of appeal for thirty days "upon a showing of excusable neglect or good cause." *Id.* at 348–49, 910 P.2d at 119–20. The Hawai'i Supreme Court held that appellant's extension motion had not been supported by good cause or excusable neglect; that the trial court had abused its discretion by granting the motion; and that the supreme court had no jurisdiction to consider the appeal because the appeal was untimely. *Id.* at 349–56, 910 P.2d at 120–27.

In *Enos,* the appellant moved for the extension *after* the original thirty-day deadline had already expired. Thus, the appellant could not have relied upon the trial court's extension order in failing to meet the original filing deadline or been induced by the trial court's extension order to miss that deadline. Instead, appellant sought an extension order from the trial court to cure appellant's mistake in missing the original filing deadline.

The absence of any detrimental reliance on the trial court's order is what distinguishes *Enos* from the present case. Here, Plaintiffs–Appellants could have, and presumably would have, filed their notice of appeal on time if the trial court had not approved and ordered the two-week extension. Plaintiffs–Appellants sought and obtained the trial court's order extending the filing deadline before the expiration of the original deadline. It was reasonable for the Plaintiffs–Appellants to rely upon and trust the order issued by the trial court. In justifiable reliance on the extension ordered by the trial court, Plaintiffs–Appellants waited to file their notice of appeal until after the original deadline but in compliance with the new extended deadline. There is no indication that the extension prejudiced Defendant–Appellee as it stipulated to the extension.

### IV.

I do not read *Enos* as precluding the application of an equitable exception to the time limits for filing a notice of appeal under the "unique circumstances" of this case. In view of the particular circumstances of this case and "the obvious great hardship" that would result to Plaintiffs–Appellants if their reliance on the trial court's extension order was ruled invalid on appeal, I would apply an equitable exception and allow their appeal to be considered on the merits. *See Harris,* 371 U.S. at 217, 83 S.Ct. 283. Accordingly, I respectfully dissent from the decision to dismiss Plaintiffs–Appellants' appeal for lack of jurisdiction.