**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\***

**Electronically Filed
Supreme Court
SCWC-19-0000095
20-APR-2020
08:03 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

ECKARD BRANDES, INC.,
Respondent/Appellant-Appellee,

vs.

DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS,
Respondent/Appellee-Appellee,

and

SCOTT FOYT,
Petitioner/Intervenor-Appellant.

_____

SCWC-19-0000095

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-19-0000095; CIVIL NO. 18-1-0011)

APRIL 20, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

The Intermediate Court of Appeals ("ICA") dismissed this appeal on the grounds that appellate jurisdiction was lacking. The ICA ruled that the Circuit Court of the First Circuit

("circuit court")[1] abused its discretion in finding the existence of "excusable neglect" under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 4(a)(4)(B) (2016) to allow an extension of time to file a notice of appeal.

We hold that the circuit court did not abuse its discretion in determining that "excusable neglect" existed to grant Petitioner Scott Foyt's ("Foyt") motion for extension of time to file a notice of appeal, and we therefore vacate the ICA's May 21, 2019 "Order Dismissing Appellate Court Case Number CAAP-19-0000095 for Lack of Appellate Jurisdiction" and remand this case to the ICA to address the merits of the appeal.  Further, in Enos v. Pac. Transfer & Warehouse, 80 Hawai'i 345, 910 P.2d 116 (1996), this court adopted definitions of "good cause" as factors beyond the movant's control and "excusable neglect" as factors within the movant's control for purposes of former HRAP Rule 4(a)(5).  Former HRAP Rule 4(a)(5), however, allowed for extensions based on either standard, whether filed within the first thirty or next thirty days.  The division of HRAP Rule 4(a)(5) into two subsections reflected in the current HRAP Rule 4(a)(4)(A) and (B), which now allow for extensions within the first thirty days only if "good cause" exists or within the next

---

[1]    The Honorable James K. Kawashima presided.

thirty days only if "excusable neglect" exists, has resulted in dismissals of appeals in contravention of "the policy of law . . . favor[ing] dispositions of litigation on the merits." Shasteen, Inc. v. Hilton Hawaiian Village Joint Venture, 79 Hawai'i 103, 107, 899 P.2d 386, 390 (1995). We therefore clarify the terms.

## II. Background

### A. Factual Summary

Eckard Brandes, Inc. ("Eckard Brandes") is a contractor that performs sewer pipe cleaning, inspection, and repair work, including on governmental public works projects. Eckard Brandes employees are paid at different rates for work performed based on differing job classifications. Foyt was employed by Eckard Brandes from May 2000 to July 2013. During his employment, Foyt operated different kinds of trucks on various jobs, including projects for the State of Hawai'i ("State") and the City and County of Honolulu ("City"). Chapter 104 of the Hawai'i Revised Statutes ("HRS") includes provisions governing wage requirements for certain kinds of work performed for the State and City.

### B. Procedural Background

#### 1. Notice of Violation

In 2013, Foyt filed a complaint disputing his wages on various State and/or City jobs. After an investigation conducted by the Wage Standards Division of the Department of

3

Labor and Industrial Relations ("DLIR"), a May 4, 2017 Notice of

Violation was sent to Eckard Brandes.  The notice alleged

violations of HRS Chapter 104,[2] stating in relevant part as

follows:

> Prevailing Wages
> Section 104-2(b), HRS, requires that every laborer or mechanic performing work on the job site for the construction of any public work project shall be paid no less than prevailing wages. WSD [Wage Standard Division]'s investigation found that an employee was classified as a *Laborer I* for some hours and *Laborer II* for other hours, but the employee should have been classified as a *Truck Driver Tandem Dump Truck, over 8 cu. yds.; Water Truck (over 2,000 gallons)* for all hours.
>
> Overtime
> Section 104-2(c), HRS, requires the payment of overtime on Saturday, Sunday, a legal State holiday, or for time worked in excess of eight hours on any other day.  WSD found that an employee was paid the straight-time rate for hours exceeding eight hours per day.
>
> Certified Payrolls and Recordkeeping
> Section 104-3(a), HRS, requires a certified copy of all payrolls to be submitted weekly to the contracting agency. The certification shall affirm that the payrolls are

---

[2]     HRS § 104-23 (2012 & Supp. 2016) provides:

> **§ 104-23  Notification of violation**.  (a)  When the department, either as a result of a report by a contracting agency or as a result of the department's own investigation, finds that a violation of this chapter or of the terms of the contract subject to this chapter has been committed, the department shall issue a notification of violation to the contractor or subcontractor involved.
>      (b)  A notification of violation shall be final and conclusive unless within twenty days after a copy has been sent to the contractor, the contractor files a written notice of appeal with the director.
>      (c)  A hearing on the written notice of appeal shall be held by a hearings officer appointed by the director in conformance with chapter 91.
>      Hearings on appeal shall be held within sixty days of the notice of appeal and a decision shall be rendered by the hearings officer within sixty days after the conclusion of the hearing, stating the findings of fact and conclusions of law.  The hearings officer may extend the due date for decision for good cause; provided that all parties agree.

> correct and complete, that the wage rates are not less than the applicable rates contained in the Wage Rate Schedule, and that the classifications conform with the work the laborer or mechanic performed.  WSD found the following:
>
>> The employee who was classified as a *Laborer I* for some hours and *Laborer II* for other hours, should have been classified as a *Truck Driver Tandem Dump Truck, over 8 cu.yds.; Water Truck (over 2,000 gallons).*
>>
>> The employer classified employees as "*Laborer*", rather than "*Laborer I*" or "*Laborer II*".
>>
>> Pursuant to Section 104-23(b), HRS, this Notification of Violation may be appealed by filing a written notice of appeal with the Director within twenty (20) days after the date of this notification.
>>
>> The balance due on the Wage and Penalty Assessment form should be paid by May 24, 2017, to avoid further legal action, including immediate suspension from performing work on any State or county public works project. . . .

Eckard Brandes was assessed back wages due and a 10% penalty, for a total assessment of $60,131.12.

### 2.  Request for Hearing

On May 16, 2017, Eckard Brandes filed an appeal of the Notice of Violation with the Director of the DLIR pursuant to HRS § 104-23(b) and requested a hearing pursuant to HRS § 104-23(c).[3]  The Notice of Hearing listed Eckard Brandes as the appellant and the DLIR as the appellee.  Foyt was a witness at the hearing, but he was not named as a party.  The hearing was held on August 11 and 14, 2017.  On December 6, 2017, a hearing officer issued a detailed Decision and Order affirming the Notice of Violation.

---

[3]    See supra, note 2.

### 3. Appeal to the Circuit Court

On January 4, 2018, Eckard Brandes filed a Notice of Agency Appeal. Again, the only parties were Eckard Brandes as appellant and DLIR as appellee. Foyt was not listed on the certificate of service of the notice of agency appeal.

Following briefing, another circuit court judge[4] held oral argument, and on December 19, 2018, issued an order reversing the Decision and Order, concluding that a July 2005 letter from a former DLIR Director[3] established that sewer line cleaning work was not subject to HRS chapter 104.

---

[4]     The Honorable Keith K. Hiraoka presided over the actual agency appeal.

[3]     The July 26, 2005 letter stated:

> This letter is to inform you that you will not receive a survey this year because the classification of Sewer Line Tele-Repairer will be discontinued as of the next Wage Rate Schedule, Bulletin Number 461, which will be issued on September 2005.
>
> Input from the industry brought to our attention the distinction between inspection and cleaning versus repair. The inspection and cleaning function is not considered construction work as covered under Chapter 104, HRS, therefore it will not be included in the prevailing wage rate schedule. The repair work is same work that would be classified as Laborer I, a classification that already exists.
>
> Additionally, under Section 104-2(b), HRS, the law states that "prevailing wages shall not be less than the wages payable under federal law to corresponding classes." The U.S. Department of Labor does not include a separate classification for sewer line telerepairer work for construction projects covered by the federal Davis-Bacon Act. Work of that nature is classified as Laborer I. Thus, maintaining the rate classification of Sewer Line Tele-Repairer creates a prevailing wage that is less than the wages payable under federal law to corresponding classes, and is contrary to the law.

The circuit court's order stated:

> The Court finds that Appellee was bound by the July 2005
> letter, from then Director Nelson Befitel, that the work of
> sewer line cleaning was not subject to Chapter 104 HRS and
> therefore, the work performed by the Claimant at the time,
> was not subject to Chapter 104 HRS.
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the
> Decision and Order of the Department of Labor and
> Industrial Relations, Wage Standards Division, Hearings
> Branch, dated December 6, 2017, is reversed.
>
> Pursuant to Rule 72(k) of the Hawaii Rules of Civil
> Procedure, the clerk of the Court shall notify the
> governmental official or body concerned of the disposition
> of this appeal.  The Court further orders that the agency
> take action consistent with the Court's ruling.

(Emphasis in the original.)  Final judgment was entered the same
day.

### 4. Foyt's Motion to Intervene

More than one month after the December 19, 2018 final
judgment, on January 25, 2019, Foyt, through counsel, filed two
motions in the circuit court case.  The first was a motion for
leave to intervene for the sole purpose of appealing the
December 19, 2018 final judgment.  The second was a motion to
extend the time to file a notice of appeal from the December 19,
2018 final judgment.  At the time these motions were filed, the
thirty-day period under HRAP Rule 4(a) to file an appeal from
the December 19, 2018 judgment had already expired.[4]

---

[4]    HRAP Rule 4(a) provides in pertinent part:

> **(a) Appeals in civil cases.**
> (1) *Time and place of filing*. When a civil appeal is
> permitted by law, the notice of appeal shall be filed
>                                          (continued. . .)

7

In filings regarding these motions, counsel for Foyt represented Foyt had not received a copy of the final judgment until after Christmas of 2018, had then spent several weeks searching for an attorney, and that counsel had been officially retained on January 17, 2019.  He represented that the day before he had been retained, he had spoken with counsel for DLIR, who informed him that DLIR would not be appealing the circuit court's final judgment and that DLIR would not be willing to file a motion to extend time to file a notice of appeal, but would stipulate to an extension of time for Foyt to appeal.  Counsel for Foyt also declared he had not heard back from Eckard Brandes' counsel as to whether the company would also be willing to so stipulate.  Counsel also pointed out that Foyt was directly affected by the final judgment disallowing the additional wages that DLIR had ordered Eckard Brandes to pay to him.

By orders entered on February 13, 2019, the circuit court granted both motions.  The order granting Foyt's motion to extend the time to file a notice of appeal from the December 19, 2018 judgment for an additional thirty days stated that the

within 30 days after entry of the judgment or appealable order.

. . . .

8

circuit court's decision was based on counsel's arguments and "excusable neglect."

### 5.  Appeal to the ICA

Two days later, on February 15, 2019, Foyt filed a notice of appeal from the circuit court's December 19, 2018 final judgment to the ICA.  After the record on appeal was filed and before briefing, Foyt's counsel filed a Jurisdictional Statement on April 22, 2019, asserting appellate jurisdiction pursuant to HRAP Rule 4.  On April 25, 2019, Eckard Brandes filed a Statement Contesting Jurisdiction, asserting that Foyt failed to establish excusable neglect.

On May 21, 2019, the ICA filed an order dismissing the appeal for lack of appellate jurisdiction, holding the appeal untimely under HRAP Rule 4(a)(1) because the record did not establish excusable neglect to extend the time to file the notice of appeal.  The ICA noted that the initial thirty-day time period under HRAP Rule 4(a)(1) for filing a notice of appeal from the December 19, 2018 final judgment was Friday, January 18, 2019.  According to the ICA, because counsel for Foyt had admitted to speaking with counsel for DLIR on January 16, 2019, two days before the deadline, and because "Foyt had an opportunity to intervene and pursue an appeal before January 18, 2019[,]" the record did not support a finding of "excusable neglect."

### 6.  Certiorari Application

On July 19, 2019, Foyt timely[4] filed an application for writ of certiorari to review the ICA's May 21, 2019 dismissal order. Foyt contends that the ICA erred in concluding that excusable neglect had not been shown and by not reaching the merits of the appeal.  In opposition, Eckard Brandes argues that Foyt does not discuss the "excusable neglect standard or this court's decision in <u>Enos</u>, in which this court stated "the character of the neglect, rather than the consequences, should be determinative of whether it is 'excusable.'"  80 Hawai'i at 355, 910 P.2d at 126.  Eckard Brandes further quotes this portion of that opinion:

> Thus, when considering a motion brought pursuant to HRAP Rule 4(a)(5), the trial court must first determine the cause of the delay in filing the notice of appeal.  If that cause is beyond the movant's control, the motion may be granted upon a showing of "good cause."  If the cause of the delay is some mistake or inadvertence within the control of the movant, the motion may be granted only upon a showing of "excusable neglect."

<u>Enos</u>, 80 Hawai'i at 352, 910 P.2d at 123.

### III. Standards of Review

### A.  Appellate Jurisdiction

"The existence of [appellate] jurisdiction is a question of law that we review de novo under the right/wrong standard. Construction of rules promulgated by this court is also reviewed

---

4      On June 6, 2019, Foyt timely requested and received an additional thirty days to file the application for writ of certiorari.  <u>See</u> HRAP Rule 40.1(a)(1) and (a)(3) (2017).

de novo."   State v. Nilsawit, 139 Hawaiʻi 86, 90, 384 P.3d 862, 866 (2016) (internal citations and quotation marks omitted).

**B.     Finding of Excusable Neglect**

A trial court's order granting a motion to extend time for filing a notice of appeal on the grounds of excusable neglect is reviewed for an abuse of discretion.   Hall v. Hall, 95 Hawaiʻi 318, 319, 22 P.3d 965, 965-66 (2001) (overruling in part Hall v. Hall, 96 Hawaiʻi 105, 111, 26 P.3d 594, 600 (App. 2001).

**IV. Analysis**

**A.     Appellate jurisdiction exists because the circuit court did not err in determining that "excusable neglect" existed to grant the extension**

The ICA dismissed Foyt's appeal for lack of appellate jurisdiction on the grounds that there was no "excusable neglect" under HRAP Rule 4(a)(4)(B) to authorize the circuit court to grant Foyt's requested thirty-day extension to file his notice of appeal because Foyt had an opportunity to intervene and pursue an appeal before January 18, 2019.

Generally, "[w]hen a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order."   HRAP Rule 4(a)(1).   A party, however, may obtain an extension of time, after the initial thirty-day appeal deadline to file a notice of appeal has expired, upon the showing of "excusable neglect."   HRAP Rule 4(a)(4)(B).   HRAP Rule 4(a)(4) (2016) provides as follows:

(4) Extensions of time to file the notice of appeal.

(A) *Requests for extensions of time before expiration of the prescribed time.*  The court or agency appealed from, upon a showing of good cause, may extend the time for filing a notice of appeal upon motion filed within the time prescribed by subsections (a)(1) through (a)(3) of this Rule.  However, no such extension shall exceed 30 days past such prescribed time.  An extension motion that is filed before the expiration of the prescribed time may be ex parte unless the court or agency otherwise requires.

(B) *Requests for extensions of time after expiration of the prescribed time.*  The court or agency appealed from, upon a showing of excusable neglect, may extend the time for filing the notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(3) of this Rule.  However, no such extension shall exceed 30 days past the prescribed time.  Notice of an extension motion filed after the expiration of the prescribed time shall be given to the other parties in accordance with the rules of the court or agency appealed from.

Thus, based on our current rule, requests for extensions of time to file a notice of appeal before expiration of the initial thirty days are governed by the "good cause" standard of HRAP Rule 4(a)(4)(A), while requests made after the expiration of the initial thirty days are generally governed by the "excusable neglect" standard of HRAP Rule 4(a)(4)(B).

The circuit court and the ICA analyzed the timeliness of Foyt's appeal in this case based on the "excusable neglect" standard of HRAP Rule 4(a)(4)(B), as more than thirty days had elapsed after the entry of the circuit court's final judgment.

The ICA and Eckard Brandes cite to this court's opinion in Enos, 80 Hawai'i 345, 910 P.2d 116, for the definition of "excusable neglect" as a cause beyond the movant's control. Enos governed extensions of time to file notices of appeal under

a different version of HRAP Rule 4(a), which was former HRAP

Rule 4(a)(5):

> The court or agency appealed from, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion actually filed not later than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(4) of this Rule 4.  Any such motion which is filed before expiration of the prescribed time may be ex parte unless the court otherwise requires.  Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with the rules of the court or agency appealed from.  No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

Enos noted that HRAP Rule 4(a)(5) was "patterned after

Federal Rules of Appellate Procedure ("FRAP") Rule 4(a)(5),

which, until its amendment in 1979, allowed extension of time

only upon a showing of [the stricter] excusable neglect."  Enos,

80 Hawai'i at 350, 10 P.2d at 121.  Although a majority of

federal Circuit Courts of Appeal had held the "good cause"

standard applicable only when a motion to extend was filed

during the initial thirty-day period, we adopted the approach of

the First Circuit Court of Appeals consistent with the plain

language of the rule, and we allowed the "good cause" standard

to apply to requests for extensions whether they were filed

within the initial thirty days or within the next thirty days.

Enos, 80 Hawai'i at 350, 351, 910 P.2d at 121, 122.

After holding both standards applicable whether a motion was filed during the initial thirty days or the next thirty days, we then also held:

> when considering a motion brought pursuant to HRAP Rule 4(a)(5), the trial court must first determine the cause of the delay in filing the notice of appeal.  If that cause is beyond the movant's control, the motion may be granted upon a showing of "good cause."  If the cause of the delay is some mistake or inadvertence within the control of the movant, the motion may be granted only upon a showing of "excusable neglect."

Enos, 80 Hawai'i at 352, 910 P.2d at 123.  Thus, we also held in Enos that if the cause of the delay was within the control of the movant, a motion to extend could only be granted upon a showing of "excusable neglect."

Thus, pursuant to Enos, a motion for extension filed in the second thirty days could only be granted if there was "neglect" that was "excusable."  In other words, Enos used a two-part test:  (1) Was there neglect?  And if so, (2) Was the neglect excusable?  Enos appears to have used "within the movant's control" as shorthand for whether or not there was neglect, not for whether or not existing neglect was excusable.  With respect to determining whether existing "neglect" could be deemed "excusable," Enos expressly adopted the equitable standard set forth by the United States Supreme Court in Pioneer, and stated, "reasons for failure to comply with a court-ordered deadline range from acts of God to a party's choice to flout the deadline and that 'excusable neglect' is not restricted to those

circumstances beyond a party's control."  80 Hawai'i at 352, 910 P.2d at 123 (citing <u>Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993)).  In other words, <u>Enos</u> clearly indicated that "neglect" could be "excusable" even if within a party's control.

Further addressing what would constitute "excusable neglect" "within the control of the movant," we also held that "only plausible misconstruction, but not mere ignorance, of the law or rules rises to the level of excusable neglect."  <u>Enos</u>, 80 Hawai'i at 353, 910 P.2d at 124.  In other words, <u>Enos</u> stated that the "neglectful" missing of an appeal deadline based on "plausible misconstruction" of law or rules could be "excusable."  Under the specific circumstances of that case, however, we held that "excusable neglect" was not demonstrated by counsel's failure to read and comply with the plain language of the applicable procedural rules, and that the trial court therefore abused its discretion in granting a motion to extend time to file a notice of appeal.  <u>Enos</u>, 80 Hawai'i at 355, 910 P.2d at 126.  Then in <u>Hall</u>, also cited to by the ICA, we ruled that an attorney's confusion or misunderstanding regarding the rule governing extension of time to file a notice of appeal did not constitute "excusable neglect."  95 Hawai'i at 319, 22 P.3d at 966.

Foyt's appeal was analyzed by the ICA for the existence of "excusable neglect."  Although the circuit court found "excusable neglect" to exist, applying Enos and Hall, the ICA ruled that because counsel for Foyt had spoken to counsel for Eckard Brandes two days before the January 18, 2019 initial thirty-day deadline, and because Foyt presumably also could have moved to intervene earlier in the proceedings, the circuit court abused its discretion in granting an extension.  The Enos and Hall cases, however, are distinguishable from the situation at hand, and the ICA misconstrued our holding in Enos. Fundamentally, "the determination [of whether a party has shown 'excusable neglect'] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  Pioneer, 507 U.S. at 395.  Foyt was not a "party" until his motion to intervene was granted after it was filed by his newly retained attorney.[5]  In addition, according to Foyt's submissions to the circuit court, he did not receive a copy of the December 19, 2018 circuit court final judgment until after Christmas of 2018, then spent several weeks searching for an attorney.  This was during the holiday period.  Although his prospective counsel spoke to counsel for Eckard Brandes two days before the deadline, Foyt was not able to officially retain

---

[5]     It appears that under HRS Chapter 91 and HRCP Rule 72, Foyt could have been included as a party.  Because this issue has not been briefed, we do not address it further at this time.

16

counsel until January 17, 2019, one day before the initial thirty-day appeal filing deadline.  Counsel then filed motions to intervene and extend eight days later, and they were decided and granted by February 13, 2019.  Foyt's notice of appeal to the ICA was filed two days later, before the additional thirty-day extended deadline had expired.

Thus, in this case, Foyt was not even a "party" when he received the circuit court's final judgment.  His motion to intervene had to first be granted by the circuit court before he could file a notice of appeal.  Also, there was no ignorance, misreading, confusion, or misunderstanding of the law.  After being retained the day before the initial thirty-day deadline expired, counsel for Foyt prepared a motion to intervene as well as a motion for extension under HRAP Rule 4(a)(4)(B).  To the extent these circumstances were within Foyt's control, "excusable neglect" existed, and the circuit court did not abuse its discretion in granting the motion for extension of time based on HRAP Rule 4(a)(4)(B).  The ICA therefore erred in dismissing Foyt's appeal for lack of appellate jurisdiction.

**B.    Changed circumstances require us to clarify "good cause" and "excusable neglect"**

Our examination of this certiorari proceeding and HRAP Rule 4(a)(4) causes us to clarify the Enos interpretations of "good cause" and "excusable neglect."  When Enos was decided, all

motions to extend time for filing a notice of appeal were governed by one subsection of HRAP Rule 4(a), the HRAP Rule 4(a)(5) quoted above.  At that time, the language of HRAP Rule 4(a)(5) allowed for extensions of time to file notices of appeal based on "good cause" or "excusable neglect," whether or not a motion was filed within the first thirty days or within the next thirty days.

In Enos, we held that pursuant to the language of the then-existing HRAP Rule 4(a)(5), the "good cause" standard applied even if a motion to extend was not filed within the second thirty days.  80 Hawai'i at 350, 351, 910 P.2d at 121, 122.  We also held in Enos, however, that the "good cause" standard only applied if the reason for the extension was beyond the movant's control.  80 Hawai'i at 352, 910 P.2d at 123.[6]  We conversely held that if a reason for requesting an extension was within the movant's control, the motion could only be granted upon a showing of "excusable neglect."  Id.  In doing so, however, Enos expressly adopted the equitable standard set forth by the Court in Pioneer, indicating that the "neglectful" missing of an appeal deadline based on "plausible misconstruction" of law or

---

[6]     If HRAP Rule 4(a)(5) still controlled, Foyt's motion could therefore have been evaluated under the "good cause" standard for factors not within Foyt's control, obviating the need to analyze this case under the "excusable neglect" standard for factors within Foyt's control, which the ICA ruled did not exist.

rules could be "excusable." We ruled that the facts of that case did not support a finding of "excusable neglect."

After <u>Enos</u>, effective January 1, 2000, HRAP Rule 4(a) was amended, and the former HRAP Rule 4(a)(5) was split into the structure in which it now appears, with Rule 4(a)(4)(A) governing extensions of time within the first thirty days, requiring "good cause," and Rule 4(a)(4)(B) governing extensions of time within the next thirty days, requiring "excusable neglect." <u>Hall</u>, 95 Hawai'i at 319 n.1, 22 P.3d 965 at n.1.[7] Thus, from that time, according to the plain language of HRAP Rule 4(a)(4), extension requests made within the first thirty days are governed by the "good cause" standard of subsection (A)

---

[7] HRAP Rule 4(a)(4)&(5) (eff. 2000), provided the following:

> (4) *Extensions of Time to File the Notice of Appeal.*
> (A) **Requests for Extensions of Time Before Expiration of the Prescribed Time.** The court or agency appealed from, upon a showing of <u>good cause</u>, may extend the time for filing a notice of appeal upon motion filed within the time prescribed by subsections (a)(1) through (a)(3) of this rule. However, no such extension shall exceed 30 days past such prescribed time. An extension motion that is filed before the expiration of the prescribed time may be ex parte unless the court or agency otherwise requires.
> (B) **Requests for Extensions of Time After Expiration of the Prescribed Time.** The court or agency appeal[ed] from, upon a showing of <u>excusable neglect</u>, may extend the time for filing the notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by subsections (a)(1) through (a)(3) of this rule. However, no such extension shall exceed 30 days past the prescribed time. Notice of an extension motion filed after the expiration of the prescribed time shall be given to the other parties in accordance with the rules of the court or agency appealed from.

(Emphases added.)

while requests made within the next thirty days are governed by the "excusable neglect" standard of subsection (B).

Yet, as noted, before the split of HRAP Rule 4(a)(5) into Rule 4(a)(A) and (B), Enos had expanded the more lenient "good cause" standard to extension requests made in the second thirty days. Since the split into two subsections, however, a motion to extend filed after expiration of the first thirty days and within thirty days thereafter can only be granted based on "excusable neglect," which, by definition, must be a reason within the movant's control. Therefore, if the reason for seeking an extension is not within the movant's control, based on our interpretation of "excusable neglect" in Enos, an extension is not available. For example, if a self-represented litigant is hospitalized or is otherwise incapacitated on the thirtieth day, just before a notice of appeal can be filed that day as planned, and the litigant is not able to file a motion to extend until after the thirtieth day, because the reason for seeking the extension was not within the litigant's control, "excusable neglect" would not exist. And the "good cause" standard of HRAP Rule 4(a)(4)(A), for reasons not within the litigant's control, although clearly met, would not apply because the motion was filed after expiration of the first thirty days.

Conversely, Enos held that the "good cause" standard, now applicable to motions filed within the first thirty days, applies only if the reason for requesting an extension is beyond the movant's control. Thus, if the reason for seeking an extension is within the movant's control, an extension is not available if sought within the first thirty days. For example, if the professional or personal schedule of a party or a party's attorney makes it difficult to decide whether to file a notice of appeal by the end of the initial thirty days, an extension would not be available, as making such a decision is within the party's control. The same would hold true if a party or party's attorney had a family trip, an elective surgery, or other professional or family circumstance that made the decision on whether to file an appeal difficult to make within the first thirty days.[8]

The definitions of "good cause" and "excusable neglect" we adopted in Enos for purposes of the then-existing HRAP Rule 4(a)(5), which construed a rule that allowed application of either standard whether an extension was sought within the first thirty days or the next thirty days, could therefore be

---

[8]    The party or party's attorney could file a motion under HRAP Rule 4(a)(4)(B) asserting "excusable neglect" for a reason within the party's control after expiration of the first thirty days, but would be taking the risk it would be denied. Yet, they would not meet the Enos definition of "good cause" if they requested an extension within the first thirty days.

misapplied to prevent those with good reasons to qualify for extensions.  In addition, as in this case, and especially after the 2000 division of HRAP 4(a)(5) into two subsections, much litigation has ensued regarding whether "good cause" or "excusable neglect" exists.[9]

Therefore, the splitting of the former HRAP Rule 4(a)(5) into subsections allowing extensions based only on "good cause" within the first thirty days and "excusable neglect" within the next thirty days[10] has created possible unintended consequences.

---

[9]    See, e.g., Cabral v. State, 127 Hawai'i 175, 277 P.3d 269 (2012); Doe v. Doe, 98 Hawai'i 144, 44 P.3d 1085 (2002); In re Doe, No 26805 (Haw. Dec. 9, 2004) (order); Jones v. Owners and Occupants of Adjoining Lands, No. 25872, (Haw. Apr. 23, 2004) (order); Housing Fin. & Dev. Corp. v. 1974 Ltd. P'ship, No. 26500 (Haw. Aug. 12, 2004); GE Capital Hawai'i, Inc. v. Balicanta, No. 23624 (Haw. May 28, 2004) (SDO); Pitre v. Admin. Dir. of Court, No. 26316 (Haw. Apr. 7, 2004) (order); Ox Koko Marina, Inc. v. Pac. Thomas Corp., No. 25447 (Haw. Apr. 4, 2003) (order); Chon v. Ass'n of Apartment Owners of Lele Pono, Inc., No. 25185 (Haw. Sept. 30, 2002) (order); McCormick v. Keohokalole, No. 23387 (Haw. Aug. 22, 2002) (mem.); King v. Elkayam, CAAP-16-0000209 (App. July 13, 2016) (order); Ke Kailani Dev., LLC v. Ke Kailani Partners LLC, CAAP-13-0004290 (App. Mar. 30, 2016) (order); U.S. Bank Nat'l Ass'n v. Salvacion, No. 30594 (App. Apr. 26, 2011) (mem.); Bolomet v. RLI Ins. Co., No. 29798 (App. Mar. 15, 2010) (order); Whittaker v. Fransen, CAAP-16-0000520 & 16-0000335 (App. Sept. 25, 2008) (SDO); Porter v. Porter, No. 28066 (App. Oct. 13, 2006) (order).

[10]    This split has not happened in the federal rule.  As noted, in Enos, this court cited to federal cases construing "good cause" and "excusable neglect" for purposes of FRAP Rule 4(a)(5) in fashioning definitions of these terms.  FRAP Rule 4(a)(5) now provides as quoted below, and as can be seen, it allows for extensions based on "good cause" or "excusable neglect," whether filed within the first thirty or the second thirty days; as did the HRAP Rule 4(a)(5) construed in Enos, it also continues the option of obtaining an extension within the first thirty days based on an ex parte motion:

> **(5) Motion for Extension of Time.**
> **(A)** The district court may extend the time to file a notice of appeal if:
> **(i)** a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
>
> (continued. . .)

The split of HRAP Rule 4(a)(5) into two subsections after <u>Enos</u> has led to dismissals of appeals, as in this case, in derogation of "the policy of law . . . favor[ing] dispositions of litigation on the merits." <u>Shasteen</u>, 79 Hawai'i at 107, 899 P.2d at 390. The changed circumstances therefore compel us to clarify the <u>Enos</u> definitions of "good cause" and "excusable neglect" for purposes of HRAP Rule 4(a)(4)(A) and (B).

Recently, in <u>Chen v. Mah</u>, 146 Hawai'i 157, 457 P.3d 796 (2020), we addressed the "good cause" standard for purposes of a HRCP Rule 55(c) motion to set aside entry of default. We noted that in the context of a Hawai'i Family Court Rules ("HFCR") Rule 59(a) motion for a new trial, <u>Doe v. Doe</u> stated:

> "Good cause" . . . "depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which [the] decision is committed."

---

**(ii)** regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.
**(B)** A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.
**(C)** No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

Interestingly, it appears FRAP Rule 4(a)(C) allows the deadline to be extended beyond the second thirty days for up to an additional fourteen days, if a motion to extend is granted within the last fourteen days of the second thirty days.

Chen, 146 Hawai'i at 178, 457 P.3d at 817 (citing Doe v. Doe, 98 Hawai'i 144, 154, 44 P.3d 1085, 1095 (2002) (citation omitted, brackets in original)).  We also noted that Doe also referred to a Black's Law Dictionary entry, stating that "[t]he term 'good cause' has been defined to mean 'a substantial reason amounting in law to a legal excuse for failing to perform an act required by law[.]'"  Doe, 98 Hawai'i at 154, 44 P.3d at 1095 (quoting Good Cause, Black's Law Dictionary (6th ed. 1990)).  Chen, 146 Hawai'i at 178, n.22, 457 P.3d at 817, n.22.  We further pointed out that Black's Law Dictionary now defines "good cause" as "[a] legally sufficient reason."  Good cause is often the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused."  Id. (quoting Good Cause, Black's Law Dictionary (11th ed. 2019)).

Accordingly, we clarify that "good cause" is "a sufficient reason, depending upon the circumstances of the individual case, and that a finding of its existence lies largely in the discretion of the court."[11]

---

[11]     In Chen, we ruled that for purposes of HRCP Rule 55(c)), if: (1) the defendant did not deliberately fail to plead or otherwise defend or engage in contumacious conduct; or (b) if the defendant did deliberately fail to plead or otherwise defend or engage in contumacious conduct, there is no actual prejudice to the plaintiff that cannot be addressed through lesser sanctions, then "good cause" should exist to set aside an entry of default.  Chen, 146 Hawai'i at 180, 457 P.3d at 819.  We also construed our cases interpreting HRCP Rule 41(b)(2), which requires "good cause" to set aside a dismissal, as

(continued. . .)

Likewise, the plain language of the HRAP Rule 4(a)(4)(B) allows for an extension based on "excusable neglect."  As noted earlier, Enos used a two-part test:  (1) Was there neglect?  And if so, (2) Was the neglect excusable?  Enos also appears to have used "within the movant's control" as shorthand for whether or not there was neglect, not for whether or not existing neglect was excusable.  Because HRAP Rule 4 has been amended and missing a deadline now automatically triggers the "excusable neglect" standard, there is no need for courts to examine whether or not the reason for missing the deadline was within the movant's control.

Accordingly, as indicated by the United States Supreme Court in Pioneer, 507 U.S. 380, which was cited favorably in Enos,[12] whether "excusable neglect" exists is "at bottom an equitable" decision; it is necessary to first determine whether there is "neglect," and, if so, whether the "neglect" is

---

holding by implication that "good cause" exists to set aside a dismissal under HRCP Rule 41(b)(2) if there is no (1) deliberate delay and/or contumacious conduct; or (2) if deliberate delay or contumacious conduct exist, there is no actual prejudice that cannot be addressed through lesser sanctions.  Id.

[12]    As further discussed in note 13, infra, Pioneer construed "excusable neglect" for purposes of Bankruptcy Rule 9006(b)(1), which empowered a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline was the result of excusable neglect; the rule did not contain "good cause" language.  Enos, 80 Hawai'i at 352 & n.2, 910 P.2d at 116 & n.2.  Interestingly, we noted that the Court interpreted "excusable neglect" to include both intervening circumstances beyond a party's control and neglect on the part of a party,  Enos, 80 Hawai'i at 352, 910 P.2d at 116, but we still adopted definitions differentiating "good cause" and "excusable neglect" on these bases.

"excusable."  507 U.S. at 393-94.[13]  As also noted, with respect to determining whether existing "neglect" could be deemed "excusable," <u>Enos</u> expressly adopted the equitable standard set forth by the United States Supreme Court in <u>Pioneer</u>, and stated, "reasons for failure to comply with a court-ordered deadline range from acts of God to a party's choice to flout the deadline and . . . 'excusable neglect' is not restricted to those circumstances beyond a party's control."  We therefore clarify that, as indicated in Enos, "excusable neglect" is to be construed pursuant to its plain language:  "neglect" that is

---

[13]    As discussed in David N. May, <u>Pioneer's Paradox:  Appellate Rule 4(a)(5) and the Rule Against Excusing Ignorance of Law</u>, 48 Drake L. Rev 677 (2000) ("May"), although <u>Pioneer</u> interpreted "excusable neglect" in the context of Bankruptcy Rule 9006, the opinion ended up impacting the definition of "excusable neglect" for purposes of FRAP Rule 4(a)(5).  May, at 680-81.  The Court's definition of "excusable neglect" "advanced a new, 'flexible understanding' of excusable neglect[,]" and posited that "[d]eterminations of whether neglect is excusable should involve a broad, equitable, inquiry."  May, at 1 (citing <u>Pioneer</u>, 507 U.S. at 389).  Yet, as further discussed in the article:

> During the same years in which the circuits anointed <u>Pioneer</u> as their guiding star, a second trend was also developing.  Strangely, this second trend can be viewed as contrary to <u>Pioneer</u>.  Specifically, in the years since <u>Pioneer</u>, seven different circuits have held that a mistake or ignorance of plain law cannot be excusable neglect under Rule 4(a)(5).  Notwithstanding judicial acceptance of <u>Pioneer</u>'s broad equitable inquiry, the circuit courts have continued to apply the ancient maxim that ignorance or mistakes of plain law cannot excuse. [sic]  The circuit courts have accepted <u>Pioneer</u>'s prescription that "all relevant circumstances" must be taken into account; yet, the same courts continue to hold that "'[t]he excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules."'

May, at 681 (internal footnotes omitted).  Despite <u>Enos</u> citing favorably to <u>Pioneer</u>, that opinion, as well as <u>Hall</u>, favored the stricter interpretation of "excusable neglect" noted in the quotation above.

"excusable," which, "involve[s] a broad, equitable, inquiry" "taking into account all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 389, 393-94. As with "good cause," the determination of whether "excusable neglect" exists should lie largely in the discretion of the court.

Our clarifications of "good cause" and "excusable neglect" should reduce litigation over whether "good cause" or "excusable neglect" exists for purposes of HRAP Rule 4(a)(4)(A) and (B) and advance "the policy of law [that] favors dispositions of litigation on the merits."

### V. Conclusion

For the reasons stated above, we vacate the ICA's May 21, 2019 "Order Dismissing Appellate Court Case Number CAAP-19-000095 for Lack of Appellate Jurisdiction" and remand this case to the ICA to address the merits of the appeal.

Shawn A. Luiz
for petitioner

Richard M. Rand
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

